The HUNTINGTON NATIONAL BANK, Appellee,

v.

CHAPPELL, Appellant.

[Cite as *Huntington Natl. Bank v. Chappell*, 183 Ohio App.3d 1, 2007-Ohio-4344.]

Court of Appeals of Ohio,
Ninth District, Lorain County.

No. 06CA008979.

Decided Aug. 27, 2007.

Carl J. Rose, for appellant.

Jennifer M. Monty, for appellee.

_____

Carr, Presiding Judge.

{¶ 1} Appellant, Joseph Chappell, appeals the judgment of the Oberlin Municipal Court that entered judgment after a bench trial in favor of appellee, the Huntington National Bank. This court affirms.

I

{¶ 2} Appellee filed a complaint alleging that appellant had failed to make payments on a line of credit extended to appellant by appellee. The agreement attached to the complaint evidencing the line of credit was entered into on August 20, 1996. The agreement indicated that it was secured by real estate on West 15th Street in Lorain. Appellant answered the complaint, setting forth the affirmative defense of accord and satisfaction. The matter proceeded to trial before the court. At the conclusion of the bench trial, the trial court issued an opinion entering judgment in favor of appellee. Appellant timely appeals, setting forth one assignment of error for review.

II

**ASSIGNMENT OF ERROR**

The trial court erred in ruling against defendant-appellant in that its verdict was against the manifest weight of the evidence.

{¶ 3} Appellant argues that the trial court's verdict is against the manifest weight of the evidence. Specifically, appellant argues that the trial court's finding that he did not establish the affirmative defense of accord and satisfaction is against the manifest weight of the evidence. This court disagrees.

{¶ 4} The Ohio Supreme Court recently reiterated the distinction between a manifest-weight-of-the-evidence analysis within a civil context as opposed to a criminal context. In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the high court reiterated the distinction between the civil and criminal manifest-weight-of-the-evidence standards of review. The *Wilson* court stated that the civil manifest-weight-of-the-evidence standard was enunciated in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus, which held that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be

reversed by a reviewing court as being against the manifest weight of the evidence." *Wilson* at ¶ 24. Further, the court stated,

> when reviewing a judgment under a manifest-weight-of-the-evidence standard, a court has an obligation to presume that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80–81, 10 OBR 408, 461 N.E.2d 1273. This presumption arises because the trial judge had an opportunity "to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id. at 80, 10 OBR 408, 461 N.E.2d 1273. "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." Id. at 81, 10 OBR 408, 461 N.E.2d 1273.

Id.

{¶ 5} In regard to the affirmative defense of accord and satisfaction, the Ohio Supreme Court has held:

1. When an accord and satisfaction is pled by the defendant as an affirmative defense, the court's analysis must be divided into three distinct inquiries. First, the defendant must show that the parties went through a process of offer and acceptance—an accord. Second, the accord must have been carried out—a satisfaction. Third, if there was an accord and satisfaction, it must have been supported by consideration.

2. Two essential safeguards built into the doctrine of accord and satisfaction protect creditors or injured parties from overreaching debtors or tortfeasors: (1) there must be a good-faith dispute about the debt, and (2) the creditor must have reasonable notice that the check is intended to be in full satisfaction of the debt.

*Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 611 N.E.2d 794, paragraphs one and two of the syllabus.

{¶ 6} At trial, Jack Neil, a litigation specialist at Huntington, testified that it is his duty to review bank files and records of any account that becomes a legal matter. He testified that he has full access to all of appellee's documentation. He testified that he is familiar with the way that Huntington maintains its records regarding personal lines of credit, as well as appellant's specific line of credit in question.

{¶ 7} Neil testified that appellant took out a line of credit on August 20, 1996, up to $35,000, which was secured by real property on West 15th Street in Lorain. The account number assigned to that account was 5443190022114311, and that

**4**

number never changed. Neil testified that appellant went into default on the account. Credit-line statements from August 26, 2003, through January 26, 2004, evidence appellant's failure to pay on the account balance, which reached $19,782.83 at that time. Neil testified that Huntington initiated a foreclosure action in the case, that the West 15th Street property was sold, and that the proceeds of that sale were applied to the account balance. The statement of February 25, 2004, indicated a payment of $13,622 and a charge-off amount of $6,248.86. A computer printout of account activity on this account, authenticated by Neil, indicated that two payments, of $1,744.28 and $565.00, were made on March 5, 2004, leaving a balance on account number 5443190022114311 of $3,939.58, the amount prayed for in the complaint.

{¶ 8} Neil testified that a settlement offer was made to appellant around April 7, 2004, to allow him to settle account number 5443190022114311 for $2,954. He testified that appellant did not make that settlement payment.

{¶ 9} Neil testified regarding a lien release dated December 3, 2003, notifying appellant's representative [1] that Huntington agreed to accept appellant's offer to release the mortgage on his other property, on Hamilton Street in Wellington, in relation to account number 20002900227, for a payment of $52,960. The lien release expressly provided that those funds would also release the lien for account number 20002900230, as well as all other liens from Huntington that are related to the Hamilton Street address. However, the release also expressly provided, "This agreement releases mortgages 'only' and does not release any debts due to the Huntington." Further, there is no dispute that the line of credit relevant to this case was not secured by the Hamilton Street property, but rather by the West 15th Street property.

{¶ 10} The lien release indicates that it was sent by Marielen Hastings, a litigation specialist with Huntington. Neil testified that Hastings had the authority to settle accounts on behalf of Huntington. He testified that the only documentation he saw prepared by Hastings was the lien release. Neil testified that in his review of the other accounts and the personal line of credit, there was nothing to indicate that Huntington had offered an amount of money to settle every debt that appellant had with Huntington.

{¶ 11} At trial, appellant testified that he had four accounts with Huntington, specifically, an installment loan, a personal loan, a line of credit, and a credit-card line of credit. He testified that the accounts attached to two properties. Appellant testified that he got behind in his payments on the various accounts, that the West 15th Street property went into foreclosure, and that he sold the

---

1. According to appellant's later testimony, the representative was a real estate agent who handled the transaction.

Hamilton Street property by "short sale." He admitted that those sales did not take care of the entire debt he owed to Huntington.

{¶ 12} Appellant testified that he entered into a settlement with Hastings in January 2004 and sent her a cashier's check for $25,000. He could not remember what accounts that check may have satisfied, and he did not produce that check. He testified that there was another settlement in April 2004 "to finish out my indebtedness" and that he sent another check for $16,000 in May 2004. Appellant presented a letter (admitted into evidence) from Marielen Hastings stating that Huntington agreed to satisfy and release judgment on account number 66–20002900227 in the amount of $16,130, although the current account balance was $26,153.68. Appellant testified that he did not realize that that amount would satisfy only that account number and not all debts he owed to Huntington. Appellant testified that he wrote on the memo line of the check "Paid in full for Huntington National Bank/M. Hastings." [2] Appellant did not write any account number on the check.

{¶ 13} Appellant testified that he does not know how much money he owed to Huntington on all of his accounts in April 2004.

{¶ 14} Based on a thorough review of the evidence, this court finds that the trial court did not err in finding that Huntington proved that appellant owed money on an outstanding account and that appellant failed to prove the defense of accord and satisfaction. Huntington records, as authenticated by Huntington's litigation specialist, indicate that appellant owed $3,939.58, plus interest on a line of credit designated by account number 5443190022114311. A lien release and a letter from Huntington representative Marielen Hastings indicate that appellant and Huntington negotiated settlements in regard to various other of appellant's Huntington accounts. Neil testified that he is familiar with Huntington's records generally, as well as those specific to appellant's accounts. He testified that there is no record that appellant and Huntington reached a settlement agreement regarding account number 5443190022114311. In fact, Neil testified that Huntington offered a settlement in regard to that account but that appellant failed to tender the proposed amount of $2,954. Accordingly, there is some competent, credible evidence to support the trial court's finding that the parties did not go through a process of offer and acceptance, or accord, in regard to account number 5443190022114311. Further, because appellant never tendered payment in the amount of $2,954 to Huntington, there is some competent, credible evidence that an accord was never carried out, i.e., there was no satisfaction.

{¶ 15} In addition, appellant testified that he did not know the total amount that he owed to Huntington on his four accounts as of April 2004. Accordingly,

2. The check in evidence states, "Payment in full per Huntington National Bank/M. Hastings."

there is some competent, credible evidence to support the trial court's finding that appellant had no good faith dispute regarding the debt. Finally, although appellant noted on his check for $16,130 that it was "[p]ayment in full," he neglected to write an account number on the check, despite the fact that he knew that he had four accounts with Huntington. Hastings's settlement letter to appellant clearly indicated that payment of $16,130 would satisfy any money owed to Huntington regarding account number 6620002900227, which had a balance due of $26,153.68 as of April 22, 2004. As of March 5, 2004, appellant's account number 5443190022114311 had a balance of only $3,939.58, the amount prayed for in the complaint, nowhere near the amount of $26,153.68. Accordingly, there is some competent, credible evidence to show that Huntington did not have reasonable notice that appellant's $16,130 check was intended to satisfy all debts appellant owed to it. Under these circumstances, the trial court's verdict in favor of Huntington in the amount of $3,939.58, plus interest, is not against the manifest weight of the evidence. Appellant's sole assignment of error is overruled.

## III

{¶ 16} Appellant's assignment of error is overruled. The judgment of the Oberlin Municipal Court is affirmed.

Judgment affirmed.

MOORE, J., concurs.

DICKINSON, J., concurs in judgment only.

DICKINSON, Judge, concurring in judgment only.

{¶ 17} Defendant Joseph Chappell's sole assignment of error is that the trial court's conclusion that he failed to establish the affirmative defense of accord and satisfaction was against the manifest weight of the evidence. It is necessary, therefore, to determine when an appellate court should reverse a judgment in a civil case based on weight of the evidence.

{¶ 18} Generally, in order for a party asserting a particular claim to succeed on that claim, evidence in the record must prove essential elements of the claim. For example, in order for a party to recover on a negligence claim, the evidence must prove (1) a duty running from the defendant to the plaintiff, (2) a breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) a proximate causal relationship between the breach of duty and the damages. *Hester v. Dwivedi* (2000), 89 Ohio St.3d 575, 578, 733 N.E.2d 1161. The same is true of a party relying on an affirmative defense. For example, in order for a defendant in a negligence or product-liability action to avoid liability based on the

affirmative defense of assumption of the risk, the evidence must prove (1) that the plaintiff had full knowledge of a condition, (2) that the condition was patently dangerous to the plaintiff, and (3) that the plaintiff voluntarily exposed himself to the hazard created. *Briere v. Lathrop Co.* (1970), 22 Ohio St.2d 166, 174–175, 51 O.O.2d 232, 258 N.E.2d 597. If the evidence does not prove any one of the essential elements of a claim or affirmative defense, the party asserting that claim or affirmative defense has not carried his burden of proof and, therefore, the claim or affirmative defense fails.

{¶ 19} In order for the evidence to satisfy the burden of proof on a particular claim or affirmative defense, two things must be true about that evidence. First, it must be evidence that, if believed, will prove the essential elements of the claim or defense. Second, it must be believable. The first prong, the requirement that the record contain evidence that, if believed, will prove the essential elements, is the adequacy prong. The second prong, the requirement that the evidence be believable, is the believability prong.

{¶ 20} If the adequacy prong is not satisfied, that is, if there is not evidence in the record that, if believed, will prove all the essential elements of the claim or affirmative defense, the claim or affirmative defense should not reach the trier of fact. In *Brittain v. Indus. Comm. of Ohio* (1917), 95 Ohio St. 391, 115 N.E. 110, overruled on other grounds by *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court described this situation as the party with the burden of proof failing at the threshold:

> [I]f there be say four essential and material elements necessary to enable the party to establish his case, and some competent evidence be introduced tending to prove three of these four material elements, but no competent evidence at all tending to prove the fourth of this series of elements, then he has failed at the threshold, and it is then within the power of the court to direct a verdict of the jury against him.

Id. at 394–395, 115 N.E. 110.

{¶ 21} If the adequacy prong is satisfied, the case is submitted to the trier of fact, and the trier of fact, at least in the first instance, determines whether the believability prong is satisfied. In a jury trial, if the jury determines that evidence tending to prove all the essential elements of the judgment or defense is believable, it returns a verdict for the party who had the burden of proof. In a bench trial, under the same circumstance, the trial court enters judgment in favor of the party with the burden of proof. If the jury or trial court determines that the evidence tending to prove one or more of the essential elements is not believable, the jury returns a verdict or the trial court enters judgment against the party who had the burden of proof. In determining whether the second

prong of the burden of proof is satisfied, the trier of fact weighs the evidence and determines whether it is believable.

{¶ 22} There are two possible reasons why a trier of fact would determine that evidence that satisfies the adequacy prong of the burden of proof fails the believability prong. First, the evidence may simply be unbelievable in its own right:

> The [trier of fact] was not required to accept the testimony of the sole witness simply because it was uncontradicted, unimpeached and unchallenged. The trier of facts always has the duty, in the first instance, to weigh the evidence presented and has the right to accept or reject it.

*Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 138, 48 O.O.2d 169, 249 N.E.2d 892. Second, even if the evidence standing on its own may appear believable, it may be rebutted by opposing evidence that convinces the trier of fact that it is not.

{¶ 23} In *Brittain v. Indus. Comm. of Ohio* (1917), 95 Ohio St. 391, 115 N.E. 110, the Ohio Supreme Court considered whether all three judges of a court of appeals had to agree in order to reverse a trial court's judgment based on "insufficient evidence." At that time, Section 6, Article IV, of the Ohio Constitution provided that an appellate court could not reverse a trial court's judgment based upon the "weight of the evidence" unless all three judges agreed:

> No judgment of a court of common pleas, a superior court or other court of record shall be reversed except by the concurrence of all the judges of the court of appeals on the weight of the evidence, and by a majority of such court of appeals upon other questions* * *.

In *Brittain*, the court of appeals had reversed a judgment in favor of the plaintiffs, giving as its only reason for doing so that "the verdict of the jury was not sustained by sufficient evidence." *Brittain*, 95 Ohio St. at 393, 115 N.E. 110. The plaintiffs appealed to the Supreme Court and argued that the verdict in their favor should have been affirmed by the court of appeals because, under Section 6, Article IV, all three judges of the court of appeals had to agree in order to reverse based upon "insufficient evidence."

{¶ 24} In considering whether all three appellate judges had to agree in order to reverse based upon "insufficient evidence," the Supreme Court reasoned that before evidence can be "insufficient," there must be some evidence on each essential element:

> Sufficient is defined as "adequate," "enough," "as much as may be necessary." When used in connection with evidence, it certainly implies some evidence. If we speak of one as lacking sufficient clothing to protect him from

cold, it is not our meaning that he is entirely destitute of clothing, but rather that he needs more clothing.

There is no possible sense in which the term "sufficient," as associated with the word "evidence," may be used so as to imply that there is an entire lack of evidence. It may be slight and unsatisfactory, or it may only be a little short of the amount required. In either case it may be *insufficient*, but still it is *some.*

(Emphasis sic.) *Brittain,* 95 Ohio St. at 394, 115 N.E. 110. It further reasoned that the phrases "against the weight of the evidence" and "not sufficient evidence" had long been used by lawyers and courts interchangeably. It concluded that if the party with the burden of proof failed at the threshold, that is, if the record did not contain evidence that, if believed, would prove each essential element of a claim or defense, that party had failed to present "any evidence" rather than failing to present "sufficient evidence":

[L]et us assume that [the] second, third, fourth and fifth of [the essential elements of a five-element claim] were proven by uncontradicted testimony, but that no evidence at all had been offered proving or tending to prove the first essential [element] * * *.

If a record in such a state were submitted to the court of appeals, that court, only two judges concurring, could under the constitution reverse such judgment, if one had been rendered in favor of claimants, not on the ground that the evidence was not sufficient, but for the reason that there was *no* evidence. In short, if the claimant fails to offer some proof in support of any *one* of many material elements that must concur to entitle him to recover, he fails, because there is no evidence, no matter how adequately he may support by legal evidence all of the other material elements in the case.

(Emphasis sic.) Id. at 395, 115 N.E. 110. Since, according to the Supreme Court in *Brittain,* the phrases "against the weight of the evidence" and "not sufficient evidence" were interchangeable, all three appellate judges had to agree in order to reverse a trial court's judgment based on "not sufficient evidence":

In view of the fact that the two phrases "against the weight of the evidence" and "not sufficient evidence" have so long been given the same meaning in our procedure, the framers of the amendment to Section 6, Article 4, of the Constitution, will be presumed to have had that fact in mind and to have intended that a court of appeals should not have authority to reverse a judgment of an inferior court on the ground that it is "against the weight of the evidence," or that it is not sustained by "sufficient evidence," unless the judgment of reversal is concurred in by all of the judges of the court.

The judgment of the court of appeals is consequently reversed, and that of the common pleas affirmed.

Id. at 398, 115 N.E. 110.

{¶ 25} According to the Supreme Court in *Brittain* then, a failure to satisfy the first prong of the burden of proof, the adequacy prong, was a failure to introduce "any evidence." A failure to satisfy the second prong, the believability prong, was a failure to introduce "sufficient evidence," which was synonymous with a failure on the "weight of the evidence."

{¶ 26} In *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court overruled that part of *Brittain* that held that "insufficient evidence" and "against the weight of the evidence" were synonymous:

The state asserts that sufficiency of the evidence and weight of the evidence are synonymous legal concepts. They are not. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different.

Id. at 386, 678 N.E.2d 541. In doing so, the Supreme Court held that "insufficient evidence" is what it had referred to in *Brittain* as "no evidence," a "failure at the threshold":

With respect to sufficiency of the evidence, " 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Robinson* (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148.

Id. Pursuant to *Thompkins* then, a failure to satisfy the adequacy prong of the burden of proof is a failure to introduce "sufficient evidence."

{¶ 27} In *Thompkins,* the Supreme Court also discussed the test applicable when a party argues that a judgment is not supported by the weight of the evidence. In doing so, it recognized that the question of whether a judgment is supported by the weight of the evidence goes to whether the evidence is believable:

Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other. It indicates

clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief.*" (Emphasis added.)

*Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Robinson* (1955), 162 Ohio St. 486, 487, 55 O.O. 388, 124 N.E.2d 148, and quoting Black's Law Dictionary (6th Ed.1990) 1594. The Supreme Court further noted that in reversing a criminal jury verdict based on weight of the evidence, an appellate court sits as a "thirteenth juror" and disagrees with the trier of fact. Id. at 387, 678 N.E.2d 541.

{¶ 28} Under *Thompkins,* if the trial court's judgment was in favor of the party that had the burden of proof on a particular claim or defense, a holding by an appellate court that the judgment on that claim or defense was against the manifest weight of the evidence would amount to a determination that even though the trier of fact believed the evidence tending to prove each essential element of the claim or defense, the evidence tending to prove one or more of those essential elements was unbelievable. On the other hand, if the trial court's judgment was against the party that had the burden of proof on a particular claim or defense, a holding by an appellate court that the trial court's judgment was against the manifest weight of the evidence would amount to a determination that even though the trier of fact did not believe the evidence tending to prove one or more of the essential elements of the claim or defense, that evidence was so believable that it could not properly be rejected.

{¶ 29} In *Thompkins,* the Supreme Court cited and quoted a test that the First District Court of Appeals had held was applicable to determining whether a trial court's judgment was against the weight of the evidence:

The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717, quoted in *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541. This test recognizes two things. First, in order to weigh the evidence in a particular case, it is necessary to review all the evidence (the evidence tending to support the judgment and the evidence tending to rebut the evidence supporting the judgment). Second, inasmuch as the conclusion reached by the original trier of fact is

entitled to great deference, a judgment should not be reversed based on the weight of the evidence simply because the appellate court believes that the trier of fact was wrong, but only if the appellate court is convinced that the trier of fact was so obviously wrong that it created "a manifest miscarriage of justice." *State v. Thompkins,* 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring). This court has long applied the *Martin* test to determine whether a trial court's judgment in a criminal case is against the weight of the evidence. See *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009.

{¶ 30} As recently recognized by the Second District Court of Appeals in *Gevedon v. Ivey,* 172 Ohio App.3d 567, 2007-Ohio-2970, 876 N.E.2d 604, at ¶ 42, there was "confusion and disagreement" among Ohio courts after the *Thompkins* decision regarding the test applicable to determine whether a civil judgment is against the weight of the evidence. This court began applying the *Martin* test in civil cases prior to the *Thompkins* decision and continued to do so following that decision. See, e.g., *Frederick v. Born* (Aug. 21, 1996), 9th Dist. No. 95CA006286, 1996 WL 471219, at *6 ("There is no reason not to apply the same standard to a manifest weight challenge to a civil judgment"); *Maverick Oil & Gas, Inc. v. Barberton City School Dist. Bd. of Edn.,* 171 Ohio App.3d 605, 2007-Ohio-1682, 872 N.E.2d 322, at ¶ 22. In applying this test in a civil or criminal case, of course, it is necessary to take into consideration that most facts in civil cases need only be proven by a preponderance of the evidence, while most facts in criminal cases must be proven beyond a reasonable doubt.

{¶ 31} In *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court held that the test for whether a judgment is against the weight of the evidence in civil cases is different from the test applicable in criminal cases. According to the Supreme Court in Wilson, the standard applicable in civil cases "was explained in *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578." Id. at 387, ¶ 24. The "explanation" in *C.E. Morris* was the following:

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. See *Chicago Ornamental Iron Co. v. Rook* (1915), 93 Ohio St. 152, 160, 112 N.E. 589; *Portage Markets Co. v. George* (1924), 111 Ohio St. 775, 146 N.E. 283 (paragraph one of the syllabus); and 3 Ohio Jurisprudence 2d 817, Appellate Review, Section 820, and the cases cited therein.

*C.E. Morris,* 54 Ohio St.2d at 280–281, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 32} Prior to *Wilson, C.E. Morris* would have properly been viewed as an aberration, an aberration that, at least arguably, was silently overruled by *Thompkins.* In reciting its test for whether a judgment was against the weight

of the evidence, the Supreme Court in *C.E. Morris* cited two earlier Ohio Supreme Court decisions and Ohio Jurisprudence. While Ohio Jurisprudence supported the test the Supreme Court adopted, the cases it cited did not.

{¶ 33} The first case cited by the Supreme Court in *C.E. Morris* was *Chicago Ornamental Iron Co. v. Rook* (1915), 93 Ohio St. 152, 112 N.E. 589. As mentioned in the discussion regarding *Brittain,* the Ohio Constitution, at Section 6, Article IV, used to provide that all the judges of a court of appeals had to agree in order to reverse a judgment of a trial court "on the weight of the evidence." (It now provides, at Section 3(B)(3), Article IV, that all the judges must agree in order to reverse a jury verdict "on the weight of the evidence.") In *Chicago Ornamental* the Supreme Court considered application of then Section 6, Article IV.

{¶ 34} The plaintiff's decedent in *Chicago Ornamental* had fallen to his death while working on a platform in an elevator shaft. The plaintiff sued the decedent's employer, alleging that it had negligently caused the decedent's death. The jury returned a verdict of $8,000 for the plaintiff, and the defendant appealed. On appeal, two judges of the court of appeals determined that there had been "no evidence" before the trial court from which the jury could have concluded that the defendant had been negligent and that therefore the judgment in favor of the plaintiff was "against the weight of the evidence":

"Upon consideration whereof, two of the judges of said court of appeals, to wit the Honorable John Pollock and the Honorable William H. Spence find that in the record and proceedings aforesaid, substantial justice has not been done to the party complaining, and that there is error manifest upon the face of the record to the prejudice of the [defendant] in this, to wit, that there is no evidence of any negligence upon the part of said [defendant], as claimed in the amended petition, and that therefore the verdict and judgment rendered in the court of common pleas is against the weight of the evidence."

*Chicago Ornamental,* 93 Ohio St. at 154, 112 N.E. 589, quoting the appellate court's journal entry. The third judge disagreed:

"To this finding one of the judges of said court of appeals, to wit: the Honorable W.S. Metcalfe dissents, and finds that said verdict and said judgment is not against the weight of the evidence. Said court not fully concurring in its said findings, it is therefore considered, ordered, and adjudged that the judgment and proceedings of the court of common pleas in said action be, and the same hereby are, affirmed."

Id. at 154–155, 112 N.E. 589, quoting the appellate court's journal entry.

{¶ 35} On appeal to the Ohio Supreme Court, the defendant argued that inasmuch as two of the judges had determined that there was "no evidence"

before the trial court (what we would now call "insufficient evidence"), the court of appeals should have reversed the trial court. That is, the defendant argued that by using the phrase "no evidence," the two judges who believed the trial court's judgment should be reversed had determined that the plaintiffs, in the phrase that the Supreme Court would use two years later in *Brittain,* had "failed at the threshold." *Brittain,* 95 Ohio St. at 395, 115 N.E. 110. They did not satisfy the adequacy prong of their burden of proof.

{¶ 36} In order to determine whether the appellate court had correctly affirmed when two of its judges believed that the trial court's judgment was supported by "no evidence," the Supreme Court reasoned that an appellate court cannot consider weight of the evidence unless there is evidence to weigh:

> The weight of the evidence involves a consideration of conflicting evidence or the probative force of evidence where there is no conflict. Where no evidence whatever is offered to maintain a material averment in a pleading upon which issue is joined, then the party upon whom the burden rests must fail. If there is some direct evidence or evidence of facts and circumstances from which the truth of the averment might naturally be inferred, then there is some evidence for the consideration of a jury, and the record in such case would present the question of the weight of the evidence.

*Chicago Ornamental,* 93 Ohio St. at 156, 112 N.E. 589. The Supreme Court explained, just as it reaffirmed in *Thompkins,* that the question of whether the party with the burden of proof has failed at the threshold, whether that failure is called a failure to present any evidence or a failure to present sufficient evidence, is a question of law and the constitutional requirement of unanimity is not applicable:

> Where a court of appeals finds that the verdict is against the weight of the evidence all the judges of that court must concur before a judgment of reversal can be entered. But this provision has no application whatever to a case in which one or more of the material averments of a pleading is not sustained by any evidence. This is a question of law for the court, and where two of the judges of a court of appeals find and declare that "there is no evidence of any negligence upon the part of said [defendant], as claimed in the amended petition," a judgment of reversal should be entered.

Id.

{¶ 37} Inasmuch as, in *Chicago Ornamental,* two judges of the court of appeals had concluded that there was no evidence to support the plaintiff's claim of negligence, if they were correct, the court of appeals should have reversed the verdict in plaintiffs' favor. If they were correct, the plaintiffs had failed the adequacy prong of their burden of proof. The Supreme Court wrote that since the case was properly before it, it would determine whether the two judges who

had concluded that the judgment was not supported by any evidence were correct:

> This case being properly in this court, it is here for the determination of all questions presented by the record, except the weight of the evidence. Whether there is any evidence to support the verdict and judgment in the common pleas court is a question that must be answered by this court before it can determine whether the judgment of affirmance in the court of appeals is erroneous, notwithstanding it is inconsistent with the conclusion reached by the judges of that court upon this question, for if that conclusion is wrong, the judgment of affirmance is right, regardless of the reasons given by the court.

*Chicago Ornamental*, 93 Ohio St. at 156–157, 112 N.E. 589. Upon reviewing the evidence that had been before the trial court, the Supreme Court determined that there had been evidence that, if believed, proved that the defendant had been negligent:

> There is evidence in this record from which the jury could reasonably find that there were holes left in this platform large enough for a man's body to fall through. The addition of even one plank, and certainly not more than two, would have made this platform safe beyond all question. It was for the jury to say from this evidence whether the defendant exercised reasonable care in not providing other planks.

Id. at 159–160, 112 N.E. 589. Inasmuch as the plaintiffs had satisfied the adequacy prong of the burden of proof, it would have been incorrect for the appellate court to reverse based upon "no evidence" (what we now call "insufficient evidence").

{¶ 38} What the Supreme Court did next is critical to understanding its opinion in *Chicago Ornamental*. As quoted above, the Supreme Court had written that an appellate court should not determine whether a judgment is supported by the weight of the evidence unless there is evidence in the record to weigh. That is, an appellate court should not consider whether the second prong of the burden of proof was satisfied unless the first prong was satisfied:

> The weight of the evidence involves a consideration of conflicting evidence or the probative force of evidence where there is no conflict.
>
> * * * If there is some direct evidence or evidence of facts and circumstances from which the truth of the averment might naturally be inferred, then there is some evidence for the consideration of a jury and the record in such case would present the question of the weight of the evidence.

*Chicago Ornamental*, 93 Ohio St. at 156, 112 N.E. 589. In reviewing the evidence that was before the trial court, the Supreme Court had determined that the plaintiffs satisfied the adequacy prong of their burden of proof by introducing evidence that, if believed, proved that the defendant had negligently caused their

decedent's death. Since the adequacy prong was satisfied, there was evidence to be weighed. The believability prong of the burden of proof was, therefore, properly before the appellate court: because there was sufficient evidence to support the judgment in plaintiffs' favor, it was appropriate for the appellate court to determine whether the judgment in their favor was supported by the weight of the evidence.

{¶ 39} As noted previously, pursuant to then Section 6, Article IV of the Ohio Constitution, all three appellate judges would have had to agree in order to reverse the judgment in the plaintiffs' favor based on weight of the evidence. Only two of the judges, however, believed that the judgment was against the weight of the evidence, and, therefore, the appellate court was not authorized to reverse that judgment. The Supreme Court did not itself weigh the evidence to determine whether the two judges who believed that the trial court's judgment was against the weight of the evidence were correct. As quoted previously, the Supreme Court wrote that the case was before it for determination "of all questions presented by the record, except weight of the evidence." *Chicago Ornamental*, 93 Ohio St. at 156, 112 N.E. 589.

{¶ 40} The Supreme Court wrote a concluding paragraph to explain that the jury's verdict was correctly affirmed by the court of appeals because there was sufficient evidence to support that verdict and because one of the judges of the court of appeals had determined that the verdict was not against the weight of the evidence. It further noted that its own review of the evidence was limited to determining that there was some evidence that, if believed, proved the defendant's negligence and that it would not "inquire into the weight of the evidence":

It is clear, therefore, that there was some evidence upon all the issues joined by the pleadings. The jury found in favor of the plaintiff. One of the judges of the court of appeals having reached the conclusion that this verdict was not against the manifest weight of the evidence, therefore, under the provisions of our constitution, that court could not reverse for this reason. This court having found that there is some evidence to sustain the verdict and judgment of the common pleas court, it will not inquire into the weight of the evidence.

*Chicago Ornamental*, 93 Ohio St. at 160, 112 N.E. 589. Rather than standing for the proposition that an appellate court applies the same test to determine whether a judgment in a civil case is supported by the weight of the evidence that it applies to determine whether the judgment is supported by sufficient evidence, the decision in *Chicago Ornamental* stands for just the opposite: that different tests are applied. The reason the appellate court had been correct in affirming the jury's verdict in favor of the party with the burden of proof was because that verdict was supported by sufficient evidence and because only two of its judges believed that the verdict was against the weight of the evidence. If all three

judges had agreed that the jury's verdict was against the weight of the evidence, even though it was supported by sufficient evidence, the appellate court would have properly reversed, and the Supreme Court would not have itself weighed the evidence to determine whether the appellate judges had correctly determined that the jury's verdict was against the weight of the evidence.

{¶ 41} The idea that the Ohio Supreme Court does not itself review the weight of the evidence has been repeated by that court numerous times. In *Neave Bldg. Co. v. Roudebush* (1917), 96 Ohio St. 40, 42, 117 N.E. 22, the Supreme Court wrote:

Whether this finding was against the manifest weight of the evidence was a question properly before the lower courts for determination. Both the common pleas and the court of appeals refused to disturb the verdict and judgment, and this court does not determine as to the weight of the evidence.

In *State v. Martin* (1955), 164 Ohio St. 54, 57 O.O. 84, 128 N.E.2d 7, the Ohio Supreme Court wrote that its "general policy" is not to review the weight of the evidence but that it may determine whether proper rules regarding the weight of the evidence were applied:

It has been established, as a general policy, that the Supreme Court *will not* determine as to the weight of the evidence.

˙ This court may, however, examine the record with a view of determining whether the proper rules as to the weight of the evidence and degree of proof have been applied.

(Emphasis sic.) Id. at 57, 57 O.O. 84, 128 N.E.2d 7. See also *State v. Smith* (1997), 80 Ohio St.3d 89, 102, 684 N.E.2d 668, fn. 4.

{¶ 42} In deciding *C.E. Morris,* the Supreme Court misread the last sentence of the concluding paragraph of the *Chicago Ornamental* opinion. Rather than recognizing it as a statement that the Supreme Court does not itself determine whether a trial court's judgment was against the weight of the evidence but limits its review to whether there was sufficient evidence to support the trial court's judgment, it read that sentence as meaning that all reviewing courts should limit their review of the evidence that was before the trial court to determining whether the trial court's judgment was supported by sufficient evidence. The opinion in *Chicago Ornamental* said no such thing.

{¶ 43} The second case cited by the Supreme Court in *C.E. Morris* was *Portage Markets Co. v. George* (1924), 111 Ohio St. 775, 146 N.E. 283. The plaintiff in that case was a 12–year–old boy who had become ill after eating a veal roast his mother had purchased from the defendant. He sued, claiming that the roast had been unfit for consumption at the time the defendant sold it. In response to a special interrogatory, the jury determined that the roast had been

unwholesome at the time the defendant sold it. It awarded the plaintiff $5000, and the defendant appealed. The court of appeals affirmed, and the defendant further appealed to the Ohio Supreme Court.

{¶ 44} The Ohio Supreme Court wrote that the record before it presented two questions, one regarding the evidence and one regarding a jury instruction. According to the Supreme Court, the question regarding the evidence was "[w]hether there is any evidence tending to support the special and general verdict of the jury." *Portage Markets*, 111 Ohio St. at 779, 146 N.E. 283.

{¶ 45} The Supreme Court reviewed part of the testimony that had been before the trial court and then wrote:

> Other testimony might be quoted from the record tending to substantiate the conclusion reached by the jury, to wit, that the meat was unwholesome when sold.

*Portage Markets*, 111 Ohio St. at 782, 146 N.E. 283. The Supreme Court then noted that the defendant had argued that the jury's verdict was a result of it drawing an inference upon an inference; an argument the court rejected. It concluded:

> The record discloses that the meat was thoroughly prepared, and cooked in the ordinary manner for roasting veal, and we can see no contributory negligence as claimed by the [defendant], but reach the conclusion that by the ordinary methods of weighing the testimony and arriving at facts the verdict of the jury in this instance is sustained by competent evidence, and that the special verdict in which they found that the meat was unwholesome cannot be said to be sustained by no evidence.

Id. at 783, 146 N.E. 283. Admittedly, the language used by the court may appear ambiguous to the modern reader. When it is recalled, however, that the Ohio Supreme Court has a policy of not reviewing the weight of the evidence that was before a trial court, the language becomes clear. The Supreme Court determined that there was sufficient evidence before the trial court (the adequacy prong was satisfied) to allow the jury to weigh the evidence and determine that the plaintiff had met his burden of proof (had satisfied the believability prong). The Supreme Court's opinion had nothing to do with the test that an appellate court should apply in order to determine whether a trial court's judgment in a civil case is supported by the weight of the evidence. In fact, it is impossible to tell from the Supreme Court's opinion whether the defendant had even argued to either the Supreme Court or the appellate court that the judgment in the plaintiff's favor was not supported by the weight of the evidence.

{¶ 46} The Supreme Court included the following in its syllabus in *Portage Markets*:

A special verdict, returned at the request of a party upon issues joined in a civil action, will not be set aside, where there is competent evidence to sustain the same.

Id., syllabus. In *C.E. Morris*, the Supreme Court cited this paragraph as support for the proposition that an appellate court should not reverse a judgment supported by "some competent, credible evidence going to all the essential elements * * * as being against the manifest weight of the evidence." *C.E. Morris*, 54 Ohio St.2d at 280–281, 8 O.O.3d 261, 376 N.E.2d 578. But, in context, the Supreme Court's holding in *Portage Markets* was only that the Supreme Court would not reverse a judgment "where there is competent evidence to sustain the same." It will not reverse a judgment as against the weight of the evidence, because it does not review the weight of the evidence.

{¶ 47} The defendant in *C.E. Morris*, Foley Construction Company, was awarded a highway construction contract. Foley, in turn, ordered steel from C.E. Morris for use in building four bridges. Morris was contractually obligated to deliver the steel by March 1969 but failed to deliver it until July 1969. Foley sought $66,074.20 in damages based upon Morris's breach of contract.

{¶ 48} The trial court determined that Morris's late delivery had not proximately caused Foley any damages. Rather, according to the trial court, Foley's "own acts or omissions resulted in substantial delay in finishing the job on time." *C.E. Morris*, 54 Ohio St.2d at 280, 8 O.O.3d 261, 376 N.E.2d 578. The court of appeals reversed the trial court because, according to the Supreme Court, it "found that the trial court's ruling on proximate cause was not supported by the evidence." Id.

{¶ 49} The Supreme Court framed the issue as being "whether the trial court's ruling that the July delivery of steel was not the proximate cause of damages suffered by Foley was correctly determined by the Court of Appeals to be against the manifest weight of the evidence." *C.E. Morris*, 54 Ohio St.2d at 280, 8 O.O.3d 261, 376 N.E.2d 578. The Supreme Court then, purportedly in reliance upon *Chicago Ornamental*, *Portage Markets*, and Ohio Jurisprudence, set forth what it asserted to be the test any reviewing court applies to determine whether a judgment is supported by the weight of the evidence:

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. See *Chicago Ornamental Iron Co. v. Rook* (1915), 93 Ohio St. 152, 160 [112 N.E. 589]; *Portage Markets Co. v. George* (1924), 111 Ohio St. 775 [146 N.E. 283] (paragraph one of the syllabus); and 3 Ohio Jurisprudence 2d 817, Appellate Review, Section 820, and the cases cited therein.

Id. at 280–281, 8 O.O.3d 261, 376 N.E.2d 578. The Supreme Court next reviewed the evidence that had been before the trial court tending to disprove proximate cause:

> The trial court's determination that the late steel delivery was not the proximate cause of Foley's failure to complete the highway on time is supported by such evidence. Trial testimony revealed that Foley requested a March steel delivery date from Morris and that Morris did not deliver the steel until July. However, there was also testimony that, while Foley completed the project 41 days late, it was on schedule when Morris delivered its steel. Witnesses also testified that, for 45 days after Morris delivered its steel and Foley could have begun to use that steel in bridge construction, the steel was stored at the construction site awaiting state and railway approval of erection plans which either Foley or a subcontractor other than Morris was responsible for delivering. Finally, there was also testimony that at least some of Foley's inability to meet its deadline was due to its failure to staff the project with adequate personnel.

(Footnote omitted.) Id. at 281, 8 O.O.3d 261, 376 N.E.2d 578. Without indicating what evidence, if any, tended to prove that Foley did suffer damages proximately caused by Morris's breach, the Supreme Court concluded that it was required to reverse the court of appeals:

> Since the record discloses that the trial court had competent evidence before it on which to base its finding that Morris' July delivery of steel was not the proximate cause of any damages suffered by Foley, we must reverse the Court of Appeals and affirm the judgment of the Court of Common Pleas.

Id.

{¶ 50} There are at least four problems with the Supreme Court's decision in *Morris*. To begin with, as discussed previously, neither *Chicago Ornamental* nor *Portage Markets* stands for the proposition for which the Supreme Court cited them. Admittedly, the Ohio Jurisprudence passage cited by the Supreme Court did stand for that proposition. The first case cited by the author of that passage as support for that proposition, however, was *Chicago Ornamental*. Perhaps reliance upon Ohio Jurisprudence was the source of the Supreme Court's misinterpretation of *Chicago Ornamental* in *Morris*. Significantly, the sentence in Ohio Jurisprudence following the sentence relied upon by the Supreme Court implicitly recognized that a court of appeals called upon to review a judgment for weight of the evidence does something different than the Supreme Court, which does not review the weight of the evidence:

> Generally, a judgment will not be reversed as against the weight of the evidence if it is supported by any competent, credible evidence which goes to all the essential elements of the case. This rule applies with especial force to

cases in the Supreme Court because of the statutory exemption of that court from the duty of weighing the evidence and its practice of refusing to do so. 3 Ohio Jurisprudence 2d (1953), Appellate Review, Section 820.

{¶ 51} The second problem with the Supreme Court's decision in *Morris* is that it requires reversal of a trial court's judgment based on weight of the evidence unless the judgment is "supported by some competent, credible evidence going to all the essential elements of the case" regardless of whether the successful party in the trial court was the party with the burden of proof or was the party who did not have the burden of proof. 54 Ohio St.2d at 280, 8 O.O.3d 261, 376 N.E.2d 578. It is easy to understand application of the *C.E. Morris* standard when the trial court's judgment was in favor of the party with the burden of proof. If there is evidence in the record satisfying the adequacy prong of the burden of proof, the judgment is affirmed. The appellate court defers to the trier of fact on the question of whether the believability prong of the burden of proof was satisfied. That is, under *C.E. Morris*, the appellate court does not itself weigh the evidence to determine whether it was believable. The trier of fact believed it and, therefore, the appellate court must affirm.

{¶ 52} Application of the *C.E. Morris* standard is more problematic if the trial court's judgment was in favor of the party who did not have the burden of proof. In order to give the same kind of deference to the trier of fact that is given when the successful party in the trial court was the party who had the burden of proof, it would seem that when the successful party was the party who did not have the burden of proof, an appellate court should affirm without reviewing the evidence. The trier of fact did not believe whatever evidence there was tending to prove the essential elements of the claim or defense and, therefore, the judgment should be affirmed. That, however, does not appear to be the way the Supreme Court intends the *C.E. Morris* standard to be applied.

{¶ 53} In *C.E. Morris*, the Supreme Court actually applied the standard it adopted. (Apparently, since this "weight of the evidence" standard does not include actually weighing the evidence, the Supreme Court's policy against weighing the evidence is not offended by Supreme Court applying it.) In applying the standard, the Supreme Court recited the evidence that was in the record tending to show that Foley had not suffered any damages proximately caused by Morris's breach of contract. That is, it recited evidence that rebutted whatever evidence there may have been in the record tending to prove that Foley suffered damages proximately caused by Morris's breach. Because of the existence of that rebuttal evidence in the record, according to the Supreme Court, the appellate court had improperly reversed the trial court's judgment:

Since the record discloses that the trial court had competent evidence before it on which to base its finding that Morris' July delivery of steel was not the

proximate cause of any damages suffered by Foley, we must reverse the Court of Appeals and affirm the judgment of the Court of Common Pleas.

*C.E. Morris,* 54 Ohio St.2d at 281, 8 O.O.3d 261, 376 N.E.2d 578. That is, because of the rebuttal evidence, the trial court's judgment was supported by "some competent, credible evidence going to all the essential elements of the case." Id. at 280, 8 O.O.3d 261, 376 N.E.2d 578. Implicit in the Supreme Court's holding is a recognition that if the rebuttal evidence had not been in the record, the appellate court would have been correct in reversing the trial court.

{¶ 54} As discussed previously, it is generally recognized that a trier of fact is free to reject testimony even if that testimony is unrebutted. Under the *C.E. Morris* standard, however, if the trier of fact rejected unrebutted testimony tending to prove an essential element, the trial court's judgment would be subject to reversal as being "against the manifest weight of the evidence." While the *C.E. Morris* standard is more deferential to the trier of fact if the trier of fact finds the burden of proof satisfied, it is less deferential if the trier of fact finds the burden of proof not satisfied.

{¶ 55} The third problem with the *C.E. Morris* standard is that it prohibits Ohio appellate courts from actually weighing the evidence. In *Davis v. DiNunzio,* 11th Dist. No. 2004–L–106, 2005-Ohio-2883, 2005 WL 1383975, the Eleventh District Court of Appeals suggested that because the *"C.E. Morris Co.* standard" on its face requires that the evidence supporting the judgment be "credible," which, according to that court, "presupposes a weighing exercise," it "is not inconsistent with the rules announced in *Thompkins.*" Id. at ¶ 22, fn. 3. In order to weigh the evidence tending to support a judgment, however, it is necessary not only to review the evidence tending to support the judgment but also to review the evidence tending to impeach the evidence tending to support the judgment. In both *C.E. Morris* and *Wilson,* the Supreme Court reviewed only evidence tending to support the trial court's judgment. The *C.E. Morris Co.* standard, therefore, is inconsistent with the rules announced in *Thompkins.*

{¶ 56} By providing that an appellate court must be unanimous to reverse a jury's verdict "on the weight of the evidence," Section 3(B)(3), Article IV, of the Ohio Constitution implicitly authorizes Ohio appellate courts, at least in jury cases, to "weigh" the evidence and, if all three judges conclude that the jury's verdict is against the weight of the evidence, to reverse it. This authority protects litigants from the rare trier of fact that clearly loses its way and creates a "manifest miscarriage of justice." This constitutional authority is ignored by the *C.E. Morris* standard.

{¶ 57} The fourth problem with the *C.E. Morris* standard is that in *Wilson,* the Supreme Court determined that the *C.E. Morris* standard applies in all civil cases, while, in criminal cases, pursuant to *Thompkins,* appellate courts weigh the

evidence and, when convinced that the trier of fact has created a "manifest miscarriage of justice," reverse the trial court's judgment. It is unclear why civil cases and criminal cases should be treated differently. Perhaps it could be argued that it is less important to avoid manifest miscarriages of justice in civil cases because civil cases often involve only money. *Wilson* itself, however, involved a civil proceeding that dealt with whether the defendant should be classified as a sexual predator with all the impositions on freedom inherent in that classification. Permanent-custody cases, " 'the family law equivalent of the death penalty in a criminal case,' " are also civil cases. *In re D.A.,* 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, at ¶ 10, quoting *In re Smith* (1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45. A belief that it is less important to ensure that a trier of fact did not create a manifest miscarriage of justice in civil cases, therefore, would not appear justified.

{¶ 58} The proposition that *C.E. Morris* was an aberration is supported by the Ohio Supreme Court's decision in *Chem. Bank of New York v. Neman* (1990), 52 Ohio St.3d 204, 556 N.E.2d 490. The plaintiff in that case had sued the defendant for fraud and, in a jury trial, recovered a judgment for $972,500 compensatory damages and $50,000 punitive damages. On appeal, the defendant argued that the jury's verdict was against the manifest weight of the evidence. Two members of the appellate court agreed with him, but because of the unanimity requirement of Section 3(B)(3), Article IV, of the Ohio Constitution, the trial court's judgment was affirmed. On appeal to the Ohio Supreme Court, the defendant again argued that the jury's verdict was against the manifest weight of the evidence. The Supreme Court noted that it does not review the weight of evidence but when presented with a request to do so will treat that request as an attack on the sufficiency of the evidence. Significantly, it cited *C.E. Morris* as setting forth the test for sufficiency, even though, in that case, the court had referred to it as the test for whether a judgment was against the manifest weight of the evidence:

This court is not required to determine the weight of evidence in civil matters, R.C. 2503.43, and ordinarily will not do so. Accordingly, we will treat [the defendant's] fifth proposition of law as an attack on the sufficiency of the evidence. Our standard of review is found in the syllabus of *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578: "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."

(Citation omitted.) Id. at 207–208, 556 N.E.2d 490. The Supreme Court concluded that the judgment was supported by sufficient evidence and affirmed the decision of the court of appeals. In *Chem. Bank,* a civil case, therefore, the Supreme Court recognized that different tests applied for determining whether a

judgment is against the manifest weight of the evidence and whether it is supported by sufficient evidence and that the *C.E. Morris Co.* standard was the test for sufficiency.

{¶ 59} Significantly, in *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, when the state argued, in reliance upon *Brittain v. Indus. Comm.* (1917), 95 Ohio St. 391, 115 N.E. 110, that "insufficient evidence" and "against the manifest weight of the evidence" were synonymous, the Supreme Court did not respond that *Brittain* was a civil case and therefore not relevant to a criminal proceeding. Rather, it explicitly overruled *Brittain. Thompkins,* 78 Ohio St.3d at 389, 678 N.E.2d 541. At that point as well, therefore, the Supreme Court apparently did not believe that the test applicable to a determination of whether a judgment is against the weight of the evidence is different for civil cases than for criminal cases.

{¶ 60} In *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Supreme Court did not treat *C.E. Morris* as an aberration. Rather, it wrote that *C.E. Morris* "explained" the "civil manifest-weight-of-the-evidence test." Id. at ¶ 24. Further, it wrote that the standard in *C.E. Morris* "tends to merge the concepts of weight and sufficiency." Id. at ¶ 26. (As discussed previously, this is true if the successful party in the trial court was the party with the burden of proof. If the successful party in the trial court was the party who did not have the burden of proof, the *C.E. Morris* standard injects a burden into the appellate court's analysis that did not exist in the trial court.)

{¶ 61} The Supreme Court, in *Wilson,* has pumped new life into the holding in *Brittain* that "insufficient evidence" and "against the weight of the evidence" are synonymous, at least if the successful party in the trial court was the party with the burden of proof. Of course, in *Brittain,* the Supreme Court held that the synonymous phrases questioned whether the second prong of the burden of proof, the believability prong, was satisfied. In *Wilson,* the Supreme Court determined that both phrases deal with the first prong, the adequacy prong:

> [T]he standard in *C.E. Morris Co.* tends to merge the concepts of weight and sufficiency. Thus, a judgment supported by "some competent, credible evidence going to all the essential elements of the case" must be affirmed. Conversely, under *Thompkins,* even though there may be sufficient evidence to support a conviction, a reviewing court can still reweigh the evidence and reverse a lower court's holdings. Thus, the civil-manifest-weight-of-the-evidence standard affords the lower court more deference then does the criminal standard.

(Citations omitted.) *Wilson* at ¶ 26.

{¶ 62} Just as in *Morris,* the successful party in the trial court in *Wilson* was the party that did not have the burden of proof. In *Wilson,* the state had sought

to have the defendant classified as a sexual predator. Following a hearing, the trial court found that he was not a sexual predator. On appeal, the appellate court concluded that the trial court's conclusion that the defendant was not a sexual predator was against the manifest weight of the evidence.

{¶ 63} In order to prove that a defendant is a sexual predator, the state must prove two essential elements: (1) that the defendant has been convicted of or pleaded guilty to committing a sexually oriented offense and (2) that the defendant is likely to engage in the future in one or more sexually oriented offenses. *Wilson*, 113 Ohio St.3d 382, 865 N.E.2d 1264, at ¶ 15. R.C. 2950.09(B)(3) lists ten factors for a court to consider in determining whether a defendant is likely to commit future sexually oriented offenses. Id. at ¶ 19. It may also consider additional "characteristics" in reaching its determination. Id.

{¶ 64} As in *C.E. Morris*, in *Wilson* the Supreme Court did not review what evidence, if any, was in the record that tended to show that the party with the burden of proof had satisfied it. The Supreme Court did note that the hearing before the trial court had taken four days, so it is unlikely that the state failed to present any evidence tending to prove that the defendant was likely to commit future sexually oriented offenses. In accordance with *C.E. Morris*, the Supreme Court reviewed the evidence that was before the trial court that tended to show that the defendant was not a sexual predator. It concluded:

> Thus, the trial judge found evidence in Wilson's favor under eight of the ten factors listed in R.C. 2950.09(B)(3), and concluded that the state had failed to prove that Wilson is a sexual predator.

Id. at ¶ 39.

{¶ 65} There is one more noteworthy aspect of the Supreme Court's opinion in *Wilson*. In addition to reviewing the evidence supporting the trial court's judgment, an appellate court is also required to review the rationale relied on by the trier of facts:

> It is clear that the court of appeals applied the criminal manifest-weight-of-the-evidence standard, because it did not evaluate the trial judge's rationale or any of the evidence the judge cited in support of his decision finding that the state failed to prove its case.

*Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, at ¶ 40. Apparently, because the trial judge's rationale in *Wilson* was that the state failed to carry its burden of proof on the second essential element, in order to affirm, there only had to be evidence tending to disprove that element, that the defendant was likely to engage in the future in one or more sexually oriented offenses, and not evidence tending to disprove the first element, that the defendant had been convicted of or pleaded guilty to committing a sexually oriented offense. (Pre-

sumably, in a civil jury case special jury interrogatories will be necessary to determine specific elements the jury found satisfied or unsatisfied in order to properly frame a manifest-weight analysis on appeal.)

{¶ 66} In this case, Chappell's sole assignment of error is that the trial court's determination that he failed to establish the affirmative defense of accord and satisfaction was against the manifest weight of the evidence. In *Allen v. R.G. Indus. Supply* (1993), 66 Ohio St.3d 229, 611 N.E.2d 794, paragraph one of the syllabus, the Ohio Supreme Court held that when a debtor claims an accord and satisfaction, a court's analysis involves "three distinct inquiries":

First, the defendant must show that the parties went through a process of offer and acceptance—an accord. Second, the accord must have been carried out—a satisfaction. Third, if there was an accord and satisfaction, it must have been supported by consideration.

Id. at 231–232, 611 N.E.2d 794. When, as in this case, the defendant claims an accord and satisfaction based upon the tender and cashing of a check, the first and second inquiries merge. Id. at 232, 611 N.E.2d 794. Tender of the check is an offer of an accord; cashing of the check is both the acceptance and satisfaction of the accord. In order for the tender and cashing of the check to satisfy the first two inquiries, "the [plaintiff] must have [had] reasonable notice that the check [was] intended to be in full satisfaction of the debt." Id. If the plaintiff did have reasonable notice, the first two inquiries are complete. It is still necessary, however, to determine whether the accord and satisfaction was supported by consideration.

{¶ 67} Consideration for the accord and satisfaction can be found in one of two ways:

The obligee's promise to accept the substituted performance in satisfaction of the original duty may be supported by consideration because that performance differs significantly from that required by the original duty or because the original duty is in fact doubtful or is believed by the obligor to be so.

Restatement of the Law 2d, Contracts (1981), Section 281, Comment *d*. In this case, Chappell's original duty was to pay money. His claimed substituted performance was a payment of a lesser amount of money. His claimed substituted performance, therefore, was not significantly different from his original duty. Accordingly, in order for there to have been consideration for the claimed accord and satisfaction, the original duty had to have been "doubtful" or have been believed to be so by Chappell. That is, there had to be a bona fide dispute over the amount Chappell owed the bank. *Allen,* 66 Ohio St.3d at 231, 611 N.E.2d 794, citing *Seeds Grain & Hay Co. v. Conger* (1910), 83 Ohio St. 169, 93 N.E. 892, paragraph one of the syllabus.

{¶ 68} In order for Chappell to succeed on his defense of accord and satisfaction in this case, therefore, he had to prove four essential elements: (1) that he tendered a check to Huntington National Bank for less than the amount the bank claimed he owed it, (2) that the bank cashed the check, (3) that the bank knew he intended the check to satisfy all of his debt to it, and (4) that there had been a bona fide dispute regarding the amount of money he owed the bank. The trial court determined that Chappell failed to satisfy the fourth essential element:

> The defendant did not establish that there was a disputed amount owed or an agreement to satisfy a disputed amount.

Trial court's opinion at 2.

{¶ 69} Pursuant to *Wilson* and *C.E. Morris*, this court must review the evidence in the record tending to prove that there was no dispute over the amount owed by Chappell. Jack Neil, the witness who testified on behalf of the bank, testified regarding the amount that the bank's records indicated Chappell owed. He had never spoken with Chappell and, therefore, obviously did not testify regarding whether Chappell had ever disputed the amount owed. Application of the *C.E. Morris* standard in the way the Supreme Court appeared to apply it in *C.E. Morris* and *Wilson*, therefore, would seem to lead to a conclusion that the trial court's judgment must be reversed because "the record discloses that the trial court" did not have "competent evidence before it on which to base its finding" that Chappell had failed to satisfy the essential elements of his accord-and-satisfaction defense. *C.E. Morris*, 54 Ohio St.2d at 281, 8 O.O.3d 261, 376 N.E.2d 578. Such a result in this case, however, would create a classic Catch–22.

{¶ 70} As noted previously, neither the opinion in *C.E. Morris* nor the opinion in *Wilson* indicates that the Supreme Court reviewed whether the record in those cases included evidence that, if believed, would have satisfied the burden of proof. Instead, in both cases, the Supreme Court, in its opinions, mentioned only rebuttal evidence; evidence tending to disprove the essential elements of the claims in those cases. It is illogical to examine rebuttal evidence, however, until it is first determined that there was something to rebut.

{¶ 71} In this case, Chappell testified that he negotiated and reached an agreement with a representative of Huntington Bank that his tendered check would satisfy his debt to the bank, that he tendered the check, and that the bank cashed it. The record contained sufficient evidence, therefore, that, if believed, satisfied the first three elements of an accord and satisfaction. Chappell did not testify, however, that there was a bona fide dispute over how much he owed the bank. There was no evidence before the trial court, therefore, that, if believed, would have satisfied the fourth essential element of the affirmative defense of accord and satisfaction. If the trial court had entered judgment in favor of

Chappell on his affirmative defense and the bank had appealed, this court would have been required to reverse that judgment as not supported by sufficient evidence, or based on the now synonymous determination that it was against the manifest weight of the evidence.

{¶ 72} Since the record also does not contain evidence tending to prove that there was not a bona fide dispute over how much Chappell owed the bank, it does not contain "some competent, credible evidence" tending to support the judgment in the bank's favor. If this court must reverse a judgment in the absence of rebuttal evidence without first determining that Chappell presented sufficient evidence, therefore, it must reverse the judgment in the bank's favor. Unless there is a step in the analysis that the Supreme Court failed to mention, whichever way the trial court had ruled in this case, this court would have to reverse.

{¶ 73} When a trial court's judgment in a civil case on a claim or defense is in favor of the party with the burden of proof, pursuant to the *C.E. Morris Co.* standard, if an appellate court determines that the trial court's judgment on that issue is supported by sufficient evidence, it cannot reverse that judgment based upon the weight of the evidence. When a trial court's judgment in a civil case on a claim or defense is against the party who had the burden of proof, an appellate court asked to reverse that judgment based upon weight of the evidence must first determine whether there is evidence in the record that, if believed, would satisfy the burden of proof. If there is not, it must affirm the trial court's judgment. If the record does include evidence that, if believed, would satisfy the burden of proof, it then must determine whether the record contains rebuttal evidence. If it does not, it must reverse the trial court's judgment. If it does, it must affirm the trial court's judgment.

{¶ 74} It is hoped that the Supreme Court will reexamine the issue of an appellate court's role when it is asked to reverse a trial court's judgment in a civil case as against the manifest weight of the evidence. Even if it chooses not to reinstate the authority to actually weigh the evidence, perhaps it will at least modify the applicable test to recognize the authority of a trier of fact to reject unrebutted testimony.

{¶ 75} In this case, the judgment was against the party with the burden of proof on the affirmative defense of accord and satisfaction. The record does not include evidence that, if believed, would satisfy that party's burden of proof. Accordingly, the trial court's judgment must be affirmed. I therefore, concur in the majority's judgment in this case.