DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Thomas J. Denes was convicted of operating a motor vehicle while under the influence of alcohol. He has assigned five errors, which this Court has rearranged for ease of discussion. This Court affirms his conviction because it is supported by sufficient evidence and is not against the manifest weight of the evidence; because, even if the trial court erred by allowing the State to amend one of the charges against him, that error was harmless; because the trial court did not abuse its discretion by refusing to accept Mr. Denes's plea to reckless operation as part of a plea agreement; and because the trial court did not err by denying his motion to suppress evidence. *Page 2 
 SUFFICIENCY {¶ 2} Mr. Denes's third assignment of error is that the trial court incorrectly denied his motion for acquittal at the close of the State's case and at the close of all the evidence. Under Rule 29(A) of the Ohio Rules of Criminal Procedure, a defendant is entitled to acquittal on a charge against him "if the evidence is insufficient to sustain a conviction. . . ." Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo. State v.Thompkins, 78 Ohio St. 3d 380, 386 (1997); State v. West, 9th Dist. No. 04CA008554, 2005-Ohio-990, at ¶ 33. This Court must determine whether, viewing the evidence in a light most favorable to the prosecution, it would have convinced an average juror of Mr. Denes's guilt beyond a reasonable doubt. State v. Jenks, 61 Ohio St. 3d 259, paragraph two of the syllabus (1991).
 {¶ 3} Mr. Denes was convicted of violating Section 4511.19(A)(1)(a) of the Ohio Revised Code. A person violates Section 4511.19(A)(1)(a) by operating a motor vehicle within Ohio while under the influence of alcohol.
 {¶ 4} Scott Regal testified that he was driving north on Route 58 at about 8 p.m. on March 9, 2006. He said that, as he crested a small grade in the vicinity of Mr. Denes's home, he came upon a red pickup truck traveling in the same direction at a slower speed. According to him, as he approached the truck, he had to slow down, but then the truck speeded up. As the truck crossed a set of railroad tracks, according to Mr. Regal, it went to the right side of the road and "kicked up some dust." Mr. Regal testified that, as he followed the truck north toward Wellington, it swerved within its lane a number of times and, one time, crossed the white line at the right side of road and traveled on the berm. According to Mr. Regal, when he reached the area of Findley State Park, he telephoned the Wellington Police Dispatcher and reported that he *Page 3 
was following a truck that was weaving. Shortly after the two vehicles entered Wellington, a police cruiser came from a side street and turned north behind them. Mr. Regal then turned right onto a cross street, and the cruiser continued north, following the pickup.
 {¶ 5} Sergeant Palter Bryant of the Wellington Police Department testified that, while he was on duty on March 9, 2006, the dispatcher informed him that a motorist had called to say he was following a vehicle northbound on Route 58 that "was driving all over the road." Sergeant Bryant testified that he was driving south on Route 58, and the dispatcher relayed continuous updates to him about the approaching northbound vehicles. According to him, as he approached Fourth Street in Wellington, the dispatcher told him the vehicles were crossing the railroad tracks that intersect Route 58 in the vicinity of Kent Street, and he saw two vehicles doing so. He turned right onto Fourth Street, then turned around in a driveway and drove back to the corner of Fourth Street and Route 58, where he waited at a stop sign while the two vehicles he had seen passed. He testified that the first vehicle was a blue Ford Ranger with a red tailgate and the second was a dark-colored SUV. According to him, as the SUV passed, the driver made some kind of gesture toward the pickup that the Sergeant understood to mean that it was the vehicle that the SUV driver had called about. The Sergeant turned north on Route 58 behind the SUV. The SUV then turned off Route 58 onto Pleasant Street, and the Sergeant continued to follow the pickup. He noticed it go left of center near Pleasant Street and continue to weave within its lane as it continued north. In the center of Wellington, the driver of the pickup made a left turn onto West Herrick Street, and Sergeant Bryant followed. The Sergeant said he again saw the pickup go left of center. He then activated the overhead lights on his cruiser, and the driver of the pickup made a right turn onto Depot Street and an immediate left turn into a parking space in front of the Wellington Party Center. The Sergeant testified that he noticed that, when *Page 4 
the driver pulled his truck into the parking space, it "rolled back a couple times like he was having trouble with the vehicle getting parked."
 {¶ 6} Sergeant Bryant testified that he got out of his cruiser and approached the driver of the pickup truck, who had also gotten out of his vehicle. Sergeant Bryant said he asked the driver to see his operator's license, registration, and proof of insurance. Sergeant Bryant identified the driver as Mr. Denes. According to Sergeant Bryant, he noted that Mr. Denes's eyes were red and glassy and detected an odor of alcohol "about him." Sergeant Bryant said he then asked Mr. Denes to raise one foot six inches off the ground and to count from 1001 to 1030. He testified that Mr. Denes began counting, but had difficulty standing upright, putting his foot down before he got to 1002. He tried two more times, again putting his foot down each time before he reached 1003.
 {¶ 7} Sergeant Bryant testified that he next asked Mr. Denes to take nine heel-to-toe steps on an imaginary line, turn around, and take nine heel-to-toe steps back. According to Sergeant Bryant, Mr. Denes had difficulty standing as he was walking heel-to-toe and had difficulty walking in a straight line. Sergeant Bryant testified that he then determined to place Mr. Denes under arrest. A second officer who came to the scene while Sergeant Bryant was interacting with Mr. Denes found a partial can of cold beer in a brown paper bag in the cab of Mr. Denes's truck.
 {¶ 8} Sergeant Bryant took Mr. Denes to the Wellington Police Department, provided him Miranda warnings, and asked him to submit to a chemical test. Mr. Denes refused to take the test. Sergeant Bryant testified that, while he was booking Mr. Denes, Mr. Denes asked him to dismiss or drop the charges against him between 30 and 40 times. *Page 5 
 {¶ 9} If believed, the testimony of Mr. Regal and Sergeant Bryant was sufficient to convince an average juror beyond a reasonable doubt that Mr. Denes violated Section 4511.19(A)(1)(a) of the Ohio Revised Code. Mr. Denes has not disputed that he was operating a motor vehicle within Ohio. According to both Mr. Regal and Sergeant Bryant, Mr. Denes weaved within his lane and occasionally drove outside his lane. According to Sergeant Bryant, Mr. Denes's eyes were red and glassy and he smelled of alcohol. He was also unable to hold his foot off the ground for 30 seconds or to successfully walk heel-to-toe in a straight line. Finally, his repeated requests that the charges against him be dropped were evidence that his judgment was impaired. Mr. Denes's conviction for operating a motor vehicle while under the influence of alcohol is supported by sufficient evidence, and his third assignment of error is overruled.
 MANIFEST WEIGHT {¶ 10} Mr. Denes's fourth assignment of error is that his conviction is against the manifest weight of the evidence. When a defendant argues that his conviction is contrary to the weight of the evidence, this Court must review and weigh all the evidence that was before the trial court to determine whether the jury lost its way and created a manifest miscarriage of justice. State v. Otten, 33 Ohio App. 3d 339, 340 (1986).
 {¶ 11} Mr. Denes testified on his own behalf. According to him, he had worked laying concrete blocks in Sandusky on March 9, 2006, returning to his home between 5:30 and 5:45 p.m. He said he drank two twelve-ounce cans of beer while he took a long shower. According to him, after his shower, he ate a couple of sandwiches, some chips, and some pickled eggs. He said he then drove to his son's farm, where he helped his son complete some chores. He testified that, after spending between twenty minutes and a half hour with his son, he left to go to Wellington. He claimed that he entered Route 58 at Findley State Park, which he said was *Page 6 
approximately three miles south of Wellington and three miles north of his home, where Mr. Regal had said he had started following him.
 {¶ 12} According to Mr. Denes, his drive north into Wellington was uneventful. He did say that he had recently bought the used truck he was driving that night, repaired it, and started driving it a few days earlier. He also said that it had still needed new shocks, which caused it to bounce to the right anytime he went over a bump. He testified that it was windy that evening, but denied ever weaving, crossing the center line, or crossing the fog line on the right side of the road. He said that he did not know there was a police cruiser behind him until he was turning onto Depot Street and that he then quickly turned into a parking space to get out of the Officer's way because he thought the Officer was responding to something else, not that he was trying to pull him over.
 {¶ 13} Mr. Denes claimed that he thought he had accurately followed Sergeant Bryant's instructions regarding standing with his foot up and walking heel-to-toe. He denied that he put his foot down three times before reaching 1003, instead claiming that he had held it up until reaching 1007, when, according to him, Sergeant Bryant told him to put it down. He testified that he thought he had "performed these physical tests without any problem at all." He did say that he wears hearing aids that he did not have with him that evening, so he might not have fully understood Sergeant Bryant's instructions. He denied drinking any alcohol on the day of his arrest, other than the two beers he had during his shower. He said that, if there was a partial can of beer in his truck, he had not known about it and it must have been left there by the previous owner. He testified that he refused to take a chemical test on the advice of an attorney who called him at the Police Department because he had drank the two beers earlier and because he was taking cold medicine. *Page 7 
 {¶ 14} Mr. Denes's son testified on his father's behalf. He said that his father had stopped at his farm and helped him with some chores and that he had not seemed intoxicated.
 {¶ 15} The owner of the Wellington Party Center also testified on Mr. Denes's behalf. He had seen Mr. Denes being arrested and, approximately an hour later, picked him up at the Wellington Police Department. He drove him to the home of the Wellington Police Chief and waited while Mr. Denes had a conversation with the Chief. He then drove him back to the Wellington Party Center and home from there. He testified that he had seen Mr. Denes intoxicated on other occasions and that he did not seem intoxicated that night.
 {¶ 16} A patron of the Wellington Party Center accompanied the owner when he went to the police department to pick up Mr. Denes. She also accompanied the two men to the Chiefs house and back to the Party Center. She testified that Mr. Denes did not seem to be intoxicated.
 {¶ 17} Having reviewed and weighed all the evidence that was before the jury, this Court cannot say that the jury lost its way and created a manifest miscarriage of justice by finding that Mr. Denes was intoxicated while he was driving his pickup truck. Mr. Denes has pointed out that Mr. Regal testified that he was following a red pickup while the truck Mr. Denes was driving was blue. It was dark while Mr. Regal was following the truck, however, and because Mr. Denes's truck had a red tail gate, Mr. Regal could have mistakenly believed he was following a red truck. Mr. Regal said no cars ever got between him and the truck he was following until he turned onto the side street and that Sergeant Bryant's cruiser was then behind the truck. In addition, Sergeant Bryant testified to seeing Mr. Denes's truck weave and cross the center line during the time he followed it. The video from Sergeant Bryant's dash camera shows the left wheels of Mr. Denes's truck crossing the center line after he turned onto West Herrick Street. The jury could have reasonably concluded that Mr. Denes's son and the owner and *Page 8 
patron of the Wellington Party Center were mistaken in their belief that Mr. Denes was not intoxicated, or it may have disbelieved their testimony because of their relationship with Mr. Denes. Finally, Mr. Denes's testimony that, if there was a partial can of beer in his truck, he had not known about it was not credible. An officer can be seen removing a brown paper bag from the truck on the video from Sergeant Bryant's dash camera. Further, Mr. Denes testified that he, his son, and a co-worker had driven to Sandusky and back that day in the truck. Even if Mr. Denes had not himself noticed the open can of beer, surely one of the other two men would have brought it to his attention. Finally, the officer who removed it from the truck testified that it was cold. The jury did not lose its way by disbelieving Mr. Denes's testimony that he only had two cans of beer approximately two hours before his arrest. His fourth assignment of error is overruled.
 THE AMENDED CHARGE {¶ 18} Sergeant Bryant listed three charges on the citation he issued to Mr. Denes on the night of his arrest. He was convicted of the first charge, operating a motor vehicle while under the influence of alcohol. The second charge was that Mr. Denes was operating a motor vehicle under the influence of alcohol, had refused to submit to a chemical test, and had a prior conviction of operating a motor vehicle under the influence of alcohol within the last 20 years. Such conduct is a violation of Section 4511.19(A)(2) of the Ohio Revised Code. Sergeant Bryant, however, incorrectly indicated on the citation that it was a violation of Section 4511.19(B) of the Ohio Revised Code. Subpart (B) of Section 4511.19 is violated when a person under 21 years of age operates a vehicle under the influence of alcohol. The trial court allowed the State to amend the second charge on the morning of trial to cite the correct subpart. *Page 9 
 {¶ 19} Mr. Denes's first assignment of error is that the trial court incorrectly allowed the State to amend the second charge. Although the trial court allowed the State to amend the second charge to cite the correct subpart, it also granted Mr. Denes's motion for acquittal on that charge. Even if the trial court erred by allowing the amendment, therefore, Mr. Denes suffered no harm as a result. Accordingly, his first assignment of error is overruled. Crim. R. 52(A).
 THE TRIAL COURT'S REFUSAL TO ACCEPT PLEA AGREEMENT {¶ 20} Mr. Denes's second assignment of error is that the trial court incorrectly refused to accept his plea to reckless operation as part of a plea agreement. Sergeant Bryant originally charged Mr. Denes with: (1) operating a motor vehicle while under the influence of alcohol; (2) refusing to submit to a blood alcohol test, having had a prior conviction for operating a motor vehicle under the influence of alcohol within the last 20 years; and (3) failure to drive within marked lanes. During a telephone pretrial, Mr. Denes and the prosecutor told the trial court that they had entered into an agreement under which Mr. Denes would plead no contest to an amended charge of reckless operation and the State would dismiss the other charges against him. The trial court indicated that the proposed agreement was acceptable to it and requested the parties to prepare an entry "delineating the reasons for the plea agreement."
 {¶ 21} In the proffered entry, the parties indicated that the reason for the reduced charge was that the "State cannot prove all elements of the offense beyond a reasonable doubt." The trial court rejected that entry.
 {¶ 22} In a Journal Entry dated November 17, 2006, the trial court described its understanding that Mr. Denes planned to call the Wellington Police Chief as a witness on his behalf and that the State had entered into the plea agreement after the prosecutor had interviewed the Police Chief. It further wrote that, "for the integrity of the case, the specific reasons for the *Page 10 
State's position that the original charge cannot be proven beyond a reasonable doubt must be delineated." The trial court continued the trial, noting that the prosecutor had "requested additional time to discuss the matter with the [Police Chief] and with the law director." The parties apparently failed to submit an entry further delineating the reasons the State believed it could not prove the charges against Mr. Denes.
 {¶ 23} Whether to accept a proposed plea agreement is within the sound discretion of a trial court. In re Disqualification of Economus,74 Ohio St. 3d 1230, 1231 (1991). It remains true, that this Court "recognize[s] the need and thereby approve[s] of the prosecution entering into meaningful and good faith plea negotiations with defense counsel."Akron v. Ragsdale, 61 Ohio App. 2d 107, 109 (1978). As this Court noted in Ragsdale, "[w]hen a recommended plea bargain is rejected, the court ought to state reasons for [its] rejection." Id. The trial court did so in this case. It explained that it wanted a further explanation of the perceived deficiencies in the State's case before it would accept the proposed agreement. In view of the possible perception that the State was willing to reduce the charges either because Mr. Denes knew the Police Chief or in order to avoid the Police Chief having to testify, the trial court's desire for a further explanation was understandable. The trial court did not abuse its discretion by rejecting the proposed plea agreement, and Mr. Denes's second assignment of error is overruled.
 THE MOTION TO SUPPRESS {¶ 24} Mr. Denes's fifth assignment of error is that the trial court incorrectly denied his motion to suppress. He has argued that Sergeant Bryant did not have a reasonable articulable suspicion to stop him and did not have probable cause to arrest him.
 {¶ 25} Mr. Regal and Sergeant Bryant testified at the hearing on Mr. Denes's motion to suppress. Their testimony was essentially the same as the testimony they later provided at trial, *Page 11 
although Sergeant Bryant did not testify at the suppression hearing that Mr. Regal made a gesture toward the pickup Mr. Denes was driving that the Sergeant understood to mean it was the truck Mr. Regal had called about.
 {¶ 26} When a trial court decides whether a police officer had a reasonable suspicion of wrongdoing warranting a traffic stop, it must do two things. It must first determine the historical facts and it must then determine whether those historical facts, viewed from the standpoint of an objectively reasonable police officer, supported a reasonable suspicion: "The principal components of a determination of reasonable suspicion . . . will be the events which occurred leading up to the stop . . ., and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion Ornelas v. United States, 517 U.S. 690,696 (1996). While the second part of the analysis, whether the historical facts support a determination of reasonable suspicion, involves a mixed question of law and fact, the first part, the determination of the historical facts, is a pure question of fact: "The first part of the analysis involves only a determination of historical facts, but the second is a mixed question of law and fact . . ."Id.
 {¶ 27} Mr. Denes's argument regarding Sergeant Bryant's decision to stop him is addressed solely to the historical facts. He has asserted that Sergeant Bryant's testimony "was inherently unworthy of belief," suggesting that Mr. Denes's blue pickup truck was not the red pickup truck about which Mr. Regal had telephoned the police and that, if Mr. Denes's driving had been as bad as Sergeant Bryant testified it was, he would have stopped him sooner than he did.
 {¶ 28} This Court applies the "civil manifest-weight-of-the-evidence standard" to suppression issues. E.g., State v. Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 6; but see *Page 12 Id. at ¶ 14 (Dickinson, J. concurring); State v. Wilson,113 Ohio St. 3d 382, 2007-Ohio-2202 at ¶ 32. Under the "civil manifest-weight-of-the-evidence standard," this Court must affirm the trial court's factual findings if they "are supported by some competent and credible evidence." Metcalf at ¶ 6 (citing State v. Searls,118 Ohio App. 3d 739, 741 (1997)). Under this standard, this Court is not permitted to weigh the evidence and determine that testimony is "inherently unworthy of belief." See Huntington Nat'I Bank v.Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, at ¶ 55 (Dickinson, J. concurring).
 {¶ 29} Even if it is assumed that Mr. Denes's pickup is not the same truck that Mr. Regal complained about, Sergeant Bryant's testimony regarding what he saw after he started following it was competent and credible evidence that Mr. Denes was weaving and crossed the center line at least once. An objective police officer seeing the driving Sergeant Bryant testified he saw would have had a reasonable articulable suspicion that Mr. Denes was operating a motor vehicle while under the influence of alcohol. To the extent Mr. Denes's fifth assignment of error is a challenge to Sergeant Bryant's decision to stop him, it is overruled.
 {¶ 30} The analysis of a police officer's decision to arrest is similar to the analysis of the decision to stop, although it takes probable cause to arrest. "In determining whether the police had probable cause to arrest an individual for DUI, we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan, 89 Ohio St. 3d 421, 427
(citing Beck v. Ohio, 379 U.S. 89, 91 (1964); State v. Timson,38 Ohio St. 2d 122, 127 (1974)).
 {¶ 31} After Sergeant Bryant stopped Mr. Denes, his observations of his driving were supplemented with Mr. Denes's difficulty in parking his truck, the fact that his eyes were red and *Page 13 
glassy, the fact that Sergeant Bryant smelled alcohol on him, the fact that he was unable to hold his foot off the ground for three seconds, and the fact that he was unable to successfully walk heel-to-toe. There was competent and credible evidence before the trial court at the suppression hearing of facts and circumstances observed by Sergeant Bryant that would have led a prudent person to believe Mr. Denes was driving while under the influence of alcohol. To the extent Mr. Denes's fifth assignment of error is a challenge to his arrest, it is overruled.
 CONCLUSION {¶ 32} Mr. Denes's assignments of error are overruled. The judgment of the Oberlin Municipal Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Oberlin Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 14 
Costs taxed to appellant.
 SLABY, J. MOORE, P. J. CONCUR *Page 1