JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Appellant William Campana ("Campana"), pro se, appeals the trial court's adjudication of an oral contract dispute. Campana assigns thirteen errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On September 18, 2006, Campana filed a breach of contract complaint in the Bedford Municipal Court against Harvey Slomovitz ("Slomovitz") and Boulevard Title, Inc. ("Boulevard Title"). In the complaint, Campana alleged that on May 17, 2005, he and Slomovitz entered into a joint enterprise, as equal partners, to perform certain repairs and construction to a home located in Solon, Ohio for the sum of $14,800.
 {¶ 4} Campana also alleged that after the project was completed, Slomovitz failed to pay him the agreed upon share of the proceeds. In addition, Campana alleged that as a result of Slomovitz's failure to pay, Campana filed a mechanic's lien on the property where the work was done.
 {¶ 5} Campana further alleged that upon the sale of the home, Boulevard Title, the company handling the real estate closing, established an escrow account in the amount of $5,300 to satisfy the lien. Finally, Campana alleged that he discovered that Slomovitz's construction company, H. Allen Construction, Inc., has no assets and is judgment proof.
 Bench Trial *Page 4 {¶ 6} On May 22, 2007, a bench trial was held. After Boulevard Title paid the escrow amount of $5,300 to the court, it was dismissed from the case prior to the trial. Campana represented himself.
 {¶ 7} At trial, the evidence established that on or about May 17, 2005, Campana procured a contract to do repairs and construction work on a home that was in the process of being sold. Subsequently, Campana and Slomovitz entered into an oral contract, whereby Slomovitz would be the subcontractor for the project, and the two men would split the net proceeds equally. The total amount of the project was established to be $17,800.
 {¶ 8} Slomovitz testified that he paid Campana the sum of $5,573. Slomovitz testified that he paid Campana in cash, because Campana claimed he did not have an account. Slomovitz testified that he paid Campana the above sum in two payments of $3,900 and $1,673, respectively. Slomovitz testified that on those occasions, he made out a check payable to "cash," presented it to his bank, and then gave the proceeds to Campana. Copies of the two cancelled checks were entered into evidence.
 {¶ 9} Campana testified that Slomovitz never paid him the $5,300. Campana testified as follows:
 "Mr. Campana: I was to be paid one half of the project.
 The Court: The net proceeds?
 Mr. Campana: Well, that's a debated item because this project, your Honor, was actually — I was the lead bidder, I was suppose to get 10 percent for getting the lead, and I was the main salesperson. A *Page 5 
salesman gets — in the industry gets 12 percent off the top for selling the project. And then you split your profits after that. A salesman has a choice of either splitting that 40 percent or taking 12 percent off the top.
 The Court: What do you want?
 Mr. Campana: Twelve percent off the top. See, the way the industry —
 The Court: That's what you're owed, 12 percent off the top?
 Mr. Campana: Well, maybe I need to give you a little background.
 The Court: No, no. I'm asking you what you are owed? And you don't — you went from — what I think you got out of him was he owed you half the net proceeds. Now you told me you get 12 percent or maybe 40 percent —
 Mr. Campana: No.
 The Court: — I asked you to pick one, and you picked 12.
 Mr. Campana: It's 12 percent off the top, is what it is for a salesman to sell a contract. But if he gets the lead, he gets an extra 10 percent. If a professional contractor sends a salesman out —
 The Court: That's what you're owed, 12 plus 10?
 Mr. Campana: Right."[2]
 {¶ 10} The trial court entered judgment in Campana's favor in the amount of $3,916, which represented 22 percent of project's cost of $17,800. On May 24, 2007, Campana *Page 6 
requested findings of facts and conclusions of law. On June 1, 2007, the trial court issued its findings of facts and conclusions of law.
 Pro Se Civil Litigant {¶ 11} We will address Campana's assigned errors in concert. In the instant appeal, although Campana has assigned thirteen errors, he essentially argues that he was denied a fair trial because he represented himself. We disagree.
 {¶ 12} Initially, we note that pro se litigants are bound by the same rules and procedures as those litigants who retain counsel.[3] They are not to be accorded greater rights and must accept the results of their own mistakes and errors.[4]
 {¶ 13} In addition, pro se litigants are presumed to have knowledge of the law and of correct legal procedure and are held to the same standard as all other litigants.[5] He cannot expect nor demand special treatment from the judge who is to sit as impartial arbiter.[6]
 {¶ 14} Essentially, Campana argues that as a pro se civil litigant, he should have received special consideration and should not have been bound by the same rules as civil litigants represented by counsel. We are not persuaded. *Page 7 
 {¶ 15} A review of the record reveals that prior to trial, the trial court strongly recommended that Campana seek counsel to represent him in the instant matter. Campana refused to avail himself of counsel. Despite Campana's refusal, the record reveals that the trial court patiently indulged Campana in the presentation of his case.
 {¶ 16} The record also reveals that the trial court's adjudication of the dispute was well reasoned. The trial court issued findings of facts and conclusions of law, which reads in pertinent part as follows:
 "* * * The plaintiff repeatedly told the Court that he believed he was the salesman for the job and entitled to 12% of the job plus an additional 10% for the completion. It was obvious from the Defendant's cross-examination by Plaintiff, that in fact, the Plaintiff did no real work, labor or supervision of the job and only procured the job and H. Allen Construction did the job. The total amount of the job was $17,800.00, thus the sum due plaintiff by the testimony presented is $3,916.00 However, Defendant testified that he paid the Plaintiff the sum of $5,573.00. Thus, if the Defendant is correct and the Court found it's testimony to be credible, that Plaintiff was paid in cash the sum of $5,573.00 and Plaintiff directly admitted that he was paid some amounts in cash then under Plaintiff s testimony it is possible to construe that Defendant is owed a refund of $1,557.00. However, the Court, based on evidence presented by both parties, believe in fact that the arrangement was a 50-50 split of the net proceeds. The Plaintiff based on Defendant's testimony is owed $327 after giving Defendant Credit for the amount paid i.e. $5,573.00. Therefore, Judgment is entered for Plaintiff in the sum of $327.00. The sum shall be paid from the sum of $5,300.00 now held in escrow by the Court. The balance of $4,973.00 shall be paid to the Defendant.* * *"
 {¶ 17} Nonetheless, Campana argues that the trial court's mathematical calculations were not consistent with the evidence. We are not persuaded. *Page 8 
 {¶ 18} It is settled law that credibility is for the trier of the facts.[7] Where there exists competent and credible evidence supporting the findings and conclusions of the trial court, deference to such findings and conclusions must be given by the reviewing court.[8]
Further, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.[9]
 {¶ 19} In the instant case, Slomovitz testified that he paid Campana a total of $5,300.00 in cash and that he cashed checks in the amount of $3,900 and $1,673 respectively, on two separate occasions to pay Campana. Slomovitz also submitted a copy of the cancelled checks as evidence. In addition, Campana admitted that Slomovitz paid him some money in cash. Further, Campana repeatedly told the trial court that he was owed 12 percent for procuring the contract and an additional 10 percent for the completion of the project. Finally, the trial court credited Campana the amount he testified he was owed. *Page 9 
 {¶ 20} We conclude there is competent evidence, based upon the credibility assigned to the testimony of the witnesses and as determined by the trier of facts, to support the judgment. Accordingly, we overrule Campana's assigned errors.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 MARY EILEEN KILBANE, P.J., and MELODY J. STEWART, J., CONCUR *Page 10 
 APPENDIX Assignments of Error
"I. The Court committed prejudicial error by belittling appellant in his presentation of his case."
"II. The Court committed prejudicial error by failing to permit appellant sufficient time to explain and demonstrate his right to recover." "III. The Court committed prejudicial error in accepting into evidence specious, unverified, unsigned, self-serving `cash' payee-styled photo-copy documents from Defendant-Appellee Slomovitz."
"IV. The Court committed prejudicial error by accepting unverified and unsubstantiated self-serving testimony proffered by Defendant-Appellee Slomovitz."
"V. The Court committed prejudicial error by establishing an invalid unacceptable `rump jury' to aid the Court in frustrating the appellant's case, thus trespassing on appellant's case and poisoning the entire trial process."
"VI. The Court committed prejudicial error by conducting an unfair trial in concert with defendant's licensed, experienced, professional attorney, by taking advantage of this novice, pro se appellant's lack of knowledge and inexperience in the practice of law throughout the entire pre-trial and trial." *Page 11 
"VII. The Court committed prejudicial error by misleading appellant into believing that the Court had taken `judicial notice' and `knowledge regarding all documents and testimony submitted by appellant for pre-trial and thereby acknowledged that the Court accepted all the pre-trial documents and interrogatory answers into evidence."
"VIII. The Court committed prejudicial error when it `rushed to judgment,' it's final money judgment, in disregard for truth, equity, law and accuracy, making poor, sloppy, hurried, erroneous, unreasonable and careless mathematical calculations not consistent with the evidence nor the rules of evidence."
"IX. The Court committed prejudicial error by preventing appellant from cross-examining the Defendant Appellee Slomovitz for purposes of `impeaching' the defendant's privilege of corporate veil wherein the additional funds sufficient to make up the shortage in money due may be hidden by Slomovitz."
"X. The Court committed prejudicial error by holding this pro se appellant to a higher standard than was the paid professional licensed attorney and thereby trespassed on appellant's case and damaged Appellant Campana's right to recover."
"XI. The trial Court committed prejudicial error by producing an audio record of the trial which cannot be relied upon for truth and accuracy. It is faulty, flawed and inaccurate and has important evidence omitted from the actual record. It cannot be relied upon for a fair and unbiased representation of the findings of fact and conclusions of law based upon the Court's prejudicial trial conduct and the parties litigating their cases by proffering of testimony and evidence."
"XII. The Court committed prejudicial error when it denied appellant's final motion for `Judgment Not Withstanding the Verdict' or `N.O.N.,' `Non Obstante Veredicto.'"
"XIII. The trial court has committed prejudicial error by requiring this pro se appellant to preserve his right to appeal by purchasing the trial record, paying the cost of a certified court stenographer, and the costs to file the transcription into this Honorable Court of Appeals. The Court provided a courtesy copy of the record to the appellee's attorney, Mr. DiChiro as a `perk' or by `reciprocity thereby lowering the standard required of appellee's attorney Dichero."
[1] See Appendix.
[2] Tr. 61-62.
[3] Tisdale v. Javitch, Block Rathbone, Cuyahoga App. No. 83119,2003-Ohio-6883, citing Meyers v. First Natl. Bank of Cincinnati (1981),3 Ohio App.3d 209.
[4] Id.
[5] Kilroy v. B.H. Lakeshore Co. (1996), 111 Ohio App.3d 357.
[6] Id.
[7] Cox v. Cox, 2nd Dist. No. 99 CA 14, 2002-Ohio-6388, citing Myers v. Garson (1993), 66 Ohio St.3d 610, 614, 1993-Ohio-9.
[8] Id.
[9] Huntington Nat'l Bank v. Chappell, 9th Dist. No. 06CA008979, 2007-Ohio-4344, citing C.E. Morris Co. v. Foley ConstructionCo. (1978), 54 Ohio St.2d 279. *Page 1