[Cite as *Carpenter v. Carpenter*, 2011-Ohio-2321.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| | |
|---|---|
| LESLIE M. CARPENTER | C.A. No.    10CA0044-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES W. CARPENTER | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No.    08DR0403 |

DECISION AND JOURNAL ENTRY

Dated: May 16, 2011

---

DICKINSON, Judge.

INTRODUCTION

{¶1} After twenty-three years of marriage, Leslie Carpenter filed for divorce from her husband, James Carpenter. Although both parties were initially represented by lawyers, Mr. Carpenter's lawyer withdrew two days before trial. The trial court denied Mr. Carpenter's request for a continuance, and he was forced to represent himself on the first day of trial. Two months later, the trial court held a second day of trial and then divided the couple's property and awarded Ms. Carpenter spousal support. Mr. Carpenter has appealed, arguing that the trial court incorrectly denied his request for a continuance, inequitably divided the marital property, and incorrectly calculated Ms. Carpenter's income for purposes of spousal support. This Court affirms the trial court's judgment because (1) any error in the trial court's denial of Mr. Carpenter's request for a continuance of trial was harmless; (2) the trial court properly exercised

its discretion in dividing the marital property; and (3) the trial court properly exercised its discretion in awarding Ms. Carpenter spousal support.

BACKGROUND

{¶2} The Carpenters were married in September 1985 and raised three children to adulthood. On July 29, 2008, Ms. Carpenter filed for divorce. There is confusion regarding the trial date. According to the case management schedule, the trial was originally set for July 31, 2009, but was later continued to August 4, 2009. According to the trial court, the case "was called on August 4, 2009," but there is no transcript of any proceedings on that day. There is, however, a "Docket Notation" time-stamped August 18, 2009, which indicates that "[t]his matter came on for hearing on 8/4/09 before Judge Kovack for . . . [f]inal hearing." Under the heading of "Disposition" the notes say: "worked all day – no settlement; [Mr. Carpenter's] atty w/drew; [r]eset for trial on Thurs[day]." Under "status of the case," the document indicates that the case was set for trial on August 6, 2009.

{¶3} On August 5, the trial court entered a written denial of Mr. Carpenter's motion for a continuance of trial. On August 6, Mr. Carpenter's lawyer filed two written motions. In one, the lawyer requested that she be permitted to withdraw from her representation of Mr. Carpenter. In the other, she asserted that she had orally moved to withdraw on August 4 and had requested that Mr. Carpenter be given a continuance of the August 6 trial date in order to allow him "sufficient time to secure new counsel." On August 6, the case was called for trial, and a transcript of that proceeding is in the record.

{¶4} On August 6, Mr. Carpenter appeared for trial without a lawyer and told the trial court that he had tried unsuccessfully since August 4 to find a new lawyer in time for the August 6 trial date. He requested that the trial be continued "so that [his] new attorney has time to

prepare for a trial" because he "ha[s] no idea or the experience as to how to proceed in this matter." The trial court responded by acknowledging that Mr. Carpenter's lawyer "withdrew recently," but noting that "this matter has been pending since July 29, 2007." The court assured him that it would "treat this trial in such a manner that without representation you will be able to put all of your evidence, all of your concerns on the record about each issue."

{¶5} The trial court proceeded to question each party as well as Ms. Carpenter's lawyer about issues affecting the grounds for divorce, property division, and spousal support. When the trial court raised the issue of spousal support, Mr. Carpenter mentioned that he had recently lost his job. The parties agreed to the trial court's suggestion to continue the trial to see if Mr. Carpenter might obtain another job in the construction industry. The trial was continued until October 19, 2009.

{¶6} In September 2009, Mr. Carpenter, acting pro se, moved the trial court to appoint a receiver to account for the business revenues generated by Ms. Carpenter's hair salon. He based his request on his assertion that her business did not report all of its cash income for tax purposes. In October, the parties appeared again for trial. Although Ms. Carpenter was still represented by the same lawyer, Mr. Carpenter remained unrepresented for the final day of trial. At that time, both parties testified about the issues affecting spousal support. No other witnesses testified. Mr. Carpenter orally requested that the trial court appoint a receiver to determine the true value of the hair salon business before making property division and spousal support decisions. On March 17, 2010, the trial court issued a decision granting the parties a divorce, dividing the remaining property, and ordering Mr. Carpenter to pay spousal support of $250 per month, plus a 2% processing fee until the death of either party, Ms. Carpenter's remarriage, or further order of the court. Mr. Carpenter has appealed that decision.

REQUEST FOR CONTINUANCE

**{¶7}** Mr. Carpenter's first assignment of error is that the trial court incorrectly refused to continue the trial to allow him to hire a lawyer. He has argued that the trial court's judgment should be reversed and a new trial ordered because he was prejudiced by having to conduct the trial without the benefit of a lawyer. "Whether to grant a requested continuance is within a trial court's discretion." *Carrico v. Carrico*, 9th Dist. No. 08CA9394, 2009-Ohio-668, at ¶3 (citing *State v. Unger*, 67 Ohio St. 2d 65, 67 (1981)). "A trial court abuses its discretion if its 'attitude is unreasonable, arbitrary or unconscionable.'" *Id.* (quoting *Blakemore v. Blakemore*, 5 Ohio St. 3d 217, 219 (1983)).

**{¶8}** In this case, Mr. Carpenter's lawyer moved to withdraw from the case at the end of a full day of failed negotiations. The trial court permitted the withdrawal and rescheduled the trial for just two days later. The following day, August 5, 2009, the trial court entered a denial of Mr. Carpenter's motion for a continuance. On August 6, the trial court called the case for trial and required Mr. Carpenter to proceed without a lawyer, at least in part because of the court's misconception that the matter had been pending for two years. The trial court stated that the matter had been pending since July 2007, and neither party nor Ms. Carpenter's lawyer objected. In fact, the record reflects that Ms. Carpenter initiated the matter via a complaint in July 2008. On the morning of trial, Mr. Carpenter again asked for a continuance, explained that he was not prepared to proceed alone, and asserted that he had been unable to find a lawyer willing to take the case just two days before trial.

**{¶9}** "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." Civ. R. 61. Assuming, without deciding, that the trial court abused its discretion by denying Mr. Carpenter's

request for a continuance, he has not shown that he was prejudiced by the error. Although Mr. Carpenter has argued in his brief that the trial "devolved into a virtual free-for-all, which was dominated by [Ms. Carpenter's] counsel," he has failed to argue how his acting pro se "irreparably skewed the proceedings." He has argued generally that he did not know when to object and that he failed to appreciate that facts were being asserted without admissible proof. In his second assignment of error, he has argued that the trial court incorrectly valued Ms. Carpenter's income from the hair salon, causing it to incorrectly award spousal support and incorrectly depriving him of his rightful interest in a valuable marital asset.

{¶10} During the first day of trial, the court questioned both parties regarding five items of furniture, vehicles, the marital home, some retirement accounts, a bank account, a home equity line of credit, and some stocks. The parties agreed to a division of each item. The court then began questioning the parties about personal seat licenses at Brown's Stadium and the value of Ms. Carpenter's one-half interest in the hair salon. At that point, the parties and Ms. Carpenter's lawyer all agreed to table the issue of spousal support and any further discussion of the value of the hair salon. Everyone agreed to the sixty-day continuance proposed by the court.

{¶11} When the parties returned in October 2009, Mr. Carpenter remained unrepresented. He did not object to proceeding pro se and made no attempt to explain why he had not hired a lawyer during the intervening two months. Neither of his complaints about trial court error is traceable to the first day of trial. On that first day, the parties reached agreement on each point the trial court raised. It was not until the October trial date that the parties seriously discussed, and disagreed on, Ms. Carpenter's income from the hair salon. By October, Mr. Carpenter had enjoyed the continuance the trial court had previously denied, but did not return to court represented by a lawyer and did not complain about an inability to hire a new lawyer

during the delay. Therefore, any error the trial court may have committed in forcing Mr. Carpenter to proceed pro se on August 6, 2009, was harmless. See Civ. R. 61. Mr. Carpenter's first assignment of error is overruled.

## DIVISION OF PROPERTY

**{¶12}** The first part of Mr. Carpenter's second assignment of error is that the trial court incorrectly denied him an interest in his wife's hair salon business, creating an inequitable division of marital property. Under Section 3105.17.1(B) of the Ohio Revised Code, a trial court "shall divide the marital and separate property equitably between the spouses[.]" The abuse of discretion standard generally applies in domestic relations cases when there is a challenge to the trial court's decision regarding the distribution of marital property. *Budd v. Budd*, 9th Dist. No. 24485, 2009-Ohio-2674, at ¶8 (citing *Booth v. Booth*, 44 Ohio St. 3d 142, 144 (1989)). Mr. Carpenter has argued that an inequitable award resulted from the trial court's failure to properly value Ms. Carpenter's one-half interest in her hair salon, Plaza Hair Design. His argument is based on three assertions: (1) that he had given Ms. Carpenter the $15,000 she used to buy into the salon; (2) that Ms. Carpenter testified that the business employed 37 workers; and (3) that she failed to produce any documentation to support her assertion that the business was insolvent.

**{¶13}** Mr. Carpenter has essentially argued that the trial court's finding is against the manifest weight of the evidence. Therefore, this Court must apply the civil-manifest-weight-of-the-evidence standard of review. See *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, at ¶24 ("Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.") (quoting *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St. 2d 279,

syllabus (1978)). But see *Huntington Nat'l Bank v. Chappell*, 183 Ohio App. 3d 1, 2007-Ohio-4344, at ¶17-75 (Dickinson, J., concurring in judgment only).

**{¶14}** Mr. Carpenter offered undisputed testimony that Ms. Carpenter's initial $15,000 investment in the salon came from a severance package he received from a previous employer. There was no dispute, however, that the money was marital property, accrued during the marriage, and Ms. Carpenter acquired her interest in the salon during the course of the marriage. The trial court appropriately determined that Ms. Carpenter's one-half interest in the hair salon was marital property subject to division.

**{¶15}** Ms. Carpenter testified that the salon rents the space it occupies and that its assets consist of the chairs, shampoo bowls, and mirrors. She estimated the value of those assets to be approximately $10,000 to $15,000. Ms. Carpenter said that the salon was encumbered with $55,000 in debt due to a remodeling project, furniture, and supplies. Mr. Carpenter did not offer any testimony contesting that number or challenging whether the salon had been remodeled. The trial court determined that "[a]ll of the business debt is in [Ms. Carpenter's] name." The trial court asked Ms. Carpenter's lawyer for documentation of the corporate debt. According to Mr. Carpenter's brief, the trial court never received any documentation. According to the transcript, however, the trial court received an exhibit marked "Plaintiff's Exhibit A," which the trial court described as "the corporate debts." The record contains a "Creditor Information Page" that lists Leslie Carpenter as the "[c]lient." The exhibit includes information regarding three credit card accounts, the balances of which total $50,870.

**{¶16}** The trial court asked Ms. Carpenter to describe her business for the court. According to the transcript, on the first day of trial, Ms. Carpenter testified that, "[w]e have 37 employees." During the second day of trial, in response to a direct question from the court, Ms.

Carpenter testified that the salon is small, employing just the two owners, two additional stylists, and one part-time nail technician. Mr. Carpenter did not offer any testimony to refute that statement or question any apparent inconsistency in her testimony. He did, however, bolster Ms. Carpenter's testimony that the business had been declining in recent years by testifying that, according to the tax returns, the gross revenue of the salon had dipped to $170,000 in 2008 from $245,000 in 2002.

{¶17} The trial court determined that the salon's assets are valued at approximately $10,000 to $15,000 and it is approximately $50,000 in debt. Thus, it appears that the trial court relied on the exhibit indicating $50,870 in corporate debt as opposed to Ms. Carpenter's testimony that the salon was about $55,000 in debt. The trial court specified that any income Ms. Carpenter generates through the salon would be considered in the context of spousal support and not in terms of a property division. The trial court ordered Ms. Carpenter to retain her one-half interest in the business, but also ordered her to hold Mr. Carpenter harmless from any claims of the company's creditors. The trial court stated that it based that decision on the fact that "the business debt exceeds its assets."

{¶18} The trial court's decision that the business debt exceeds its assets was not against the manifest weight of the evidence. The trial court based its decision on competent, credible evidence including at least three years of corporate tax returns, both parties' testimony, and a list of corporate debts. Without formally challenging the accuracy of the transcript under Rule 9 of the Ohio Rules of Appellate Procedure, Ms. Carpenter has argued that the reference to "37 employees" is a transcription error. Given the number of obvious transcription errors in the August 2009 transcript, it would not be surprising if there was no conflict for the trial court to resolve in Ms. Carpenter's testimony on that point. To the extent that Ms. Carpenter may have

offered conflicting testimony about the number of employees at her salon, the trial court was in the best position to judge her credibility. See *Dunn v. Dunn*, 2d Dist. No. 05-CA-104, 2006-Ohio-4649, at ¶27 (quoting *State v. Lawson*, 2d Dist. No 16288, 1997 WL 476684 at *4 (Aug. 22, 1997)).

{¶19} There was competent, credible evidence to support the trial court's determination that the corporate debts exceeded its assets, making the business appear to be more of a liability than an asset to be divided between the parties. The trial court did not abuse its discretion in ordering Ms. Carpenter to retain her one-half interest in the salon while holding Mr. Carpenter harmless from all claims against it. To the extent that Mr. Carpenter's second assignment of error addressed the division of property, it is overruled.

## SPOUSAL SUPPORT

{¶20} The second part of Mr. Carpenter's second assignment of error is that the trial court incorrectly ordered spousal support. This Court reviews a trial court's determination of spousal support for an abuse of discretion. *Hyder v. Hyder*, 9th Dist. No. 06CA0014, 2006-Ohio-5285, at ¶21. Section 3105.18(B) of the Ohio Revised Code provides that the court "may award reasonable spousal support to either party." Section 3105.18(C)(1) provides that the court "shall consider" a number of specific factors in determining the amount and duration of support. The factors include the parties' income and relative earning abilities, their ages, their physical, mental, and emotional conditions, their retirement benefits, their education, their standards of living, their relative assets and liabilities, the duration of the marriage, tax consequences of a support award, the contribution of each party to the education, training, or earning ability of the other, and any other factors "that the court expressly finds to be relevant and equitable." R.C. 3105(C)(1)(a-n).

{¶21}  Mr. Carpenter has argued that the trial court's determination that Ms. Carpenter was earning approximately $22,000 a year from the salon was "a guesstimate."  He has argued that the trial court should have granted his request to appoint a receiver to value the business and identify the actual income being generated because Ms. Carpenter had not been reporting her full income on her tax returns.

{¶22}  At trial, Ms. Carpenter testified that she earns three paychecks per month of $250 from the hair salon and takes a draw of $180 three times per month.  The business also pays the premium for her health insurance.  Based on the evidence presented, the trial court determined that Ms. Carpenter's annual income was approximately $22,000.  Although the income tax returns showed a 2007 income for Ms. Carpenter of $13,500, the trial court calculated her income by considering the effect of shareholder profits, gross receipts, gross profits, "on paper" income tax deductions, and personal expenses the salon pays on her behalf.

{¶23}  Mr. Carpenter requested that a receiver be appointed because he did not believe that Ms. Carpenter had reported her full income on the tax returns she had submitted into evidence.  At trial, he told the court that the salon was largely a cash business and "we all know in that kind of business . . . that you can just take cash out of the cash register, pay your bills, and it doesn't g[et] reported."  Mr. Carpenter explained that he was suspicious of the numbers his wife had presented to the court because "mathematically it doesn't make sense" and "I know [Ms. Carpenter] knows that her and her partner take cash out of the business . . . [and] [i]t goes unreported[.]"  Mr. Carpenter did not offer any more specific allegation or any additional evidence in support of his argument that Ms. Carpenter was underreporting her income.  The trial court explained to Mr. Carpenter that, based on the evidence, the cost of appointing a receiver would likely outweigh any potential benefit.

{¶24} In considering whether an award of spousal support was appropriate, the trial court reviewed each of the statutory factors in detail. See R.C. 3105.18(C)(1)(a-n). It ordered Mr. Carpenter to pay spousal support based on finding that the couple had been married for twenty-four years, had disparate educational levels and earning capacities, and had an historic disparity in income. Mr. Carpenter is an experienced construction manager with a college degree who is accustomed to earning $80,000 annually, while Ms. Carpenter is an experienced cosmetologist who had mostly worked part-time over the course of the marriage. There was no evidence that Ms. Carpenter's earning capacity approached that of her husband. The trial court determined that Mr. Carpenter anticipated resuming employment in the construction industry as the economy recovers, and he reported no physical, mental, or emotional conditions likely to hinder his ability to do so. The trial court noted, however, that, because Mr. Carpenter was unemployed at the time of trial, "equity dictates the Court base spousal support on his reduced income from unemployment." See R.C. 3105.18(C)(1)(n). The trial court retained jurisdiction of the issue so that the parties may revisit it if necessary as circumstances change.

{¶25} The trial court's award of spousal support is not the result of an abuse of discretion and there is no evidence that the trial court's calculation of Ms. Carpenter's income was "a guesstimate." The trial court explained in detail the many issues it considered in calculating Ms. Carpenter's annual income level for purposes of spousal support. The trial court did not abuse its discretion in refusing to appoint a receiver to value the salon based on Mr. Carpenter's vague accusation that a cash business is likely to underreport its income. To the extent that it addressed spousal support, Mr. Carpenter's second assignment of error is overruled.

CONCLUSION

**{¶26}** Mr. Carpenter's first assignment of error is overruled. Assuming, without deciding, that the trial court's denial of Mr. Carpenter's request for a continuance was an abuse of discretion, it was harmless error. His second assignment of error is overruled because the trial court did not abuse its discretion in dividing the marital property or in awarding spousal support to Ms. Carpenter. The judgment of the Medina County Common Pleas Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CLAIR E. DICKINSON
FOR THE COURT

MOORE, J.
BELFANCE, P. J.
CONCUR

APPEARANCES:

PAUL W. FLOWERS, Attorney at Law, for Appellant.

RICHARD J. STAHL, Attorney at Law, for Appellee.